**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert SUMPTER, Defendant-Appellant.**

**No. 44347.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 28, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Aug. 1, 1983.

Application to Transfer Denied
Sept. 20, 1983.

Shaw, Howlett & Schwartz, Ronald J. Kaden, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, Donald J. Hager, Pros. Atty., Farmington, for plaintiff-respondent.

STEPHAN, Judge.

Defendant Robert Sumpter appeals from his convictions of attempted robbery in the first degree and first degree burglary. Defendant was sentenced in accordance with the verdict to consecutive sentences of fifteen and ten years. The judgment is affirmed.

On Sunday, April 13, 1980, at approximately 12:10 p.m., Michael McCarver, his mother, Barbara McCarver, and his grandmother Rose Ragan, were inside their second floor apartment in Flat River, Missouri. The apartment is across the hall from the office of Dr. James L. Kehoe, D.O. When they heard someone's voice on the stairs, Mrs. Ragan opened the apartment door. A man, whom the jury could conclude from the evidence was the defendant, entered the McCarver apartment; in his hand was a medium size, black automatic pistol. He asked for keys to Dr. Kehoe's office. Defendant then ordered Michael McCarver and Mrs. Ragan to lie face down on the kitchen floor. Defendant held the gun to Michael's head and told him not to get any ideas or he would kill Michael, and then he kicked Michael. Defendant ordered a second man to kick in Dr. Kehoe's door. He then ordered Michael and Mrs. Ragan into Dr. Kehoe's office, and directed them to lie down on the office waiting room floor. Defendant again threatened Michael, and kicked Michael in the ribs. Meanwhile, the second man removed drugs and medicines from a refrigerator in Dr. Kehoe's office, and placed them in pillow cases.

Barbara McCarver, who had remained in the apartment, phoned the police and the hotel where her husband, James McCarver, and his brother, Reginald McCarver, were working. Responding to the telephone calls, Officer Rawson of the Flat River Police Department as well as Reginald and James McCarver came to the scene. Rawson entered Dr. Kehoe's office while defendant was still there, causing him and his accomplice to flee through a window and escape across an adjacent metal awning. An unsuccessful chase ensued. Examination of the office a few minutes later revealed three pillow cases full of boxes and bottles of drugs abandoned near the refrigerator. Defendant was arrested some weeks later. As indicated above, the testimony concerning identification warranted a jury finding that defendant was the man who held the gun on Michael McCarver during the break-in and attempted robbery.

Defendant's first point is that the trial court erred in denying defendant's motion to dismiss because under § 545.780, RSMo 1978, the speedy trial statute, delay was excessive. The section in question generally requires that trial in a criminal case must commence within 180 days of a not guilty plea on arraignment, subject to exclusion of delays occasioned by the defendant. Defendant contends on appeal that for purposes of § 545.780, time is counted from the date of his first arraignment (July 18, 1980) until trial (March 10, 1981). According to defendant's computations, 235 days elapsed from that arraignment to trial. Defendant further argues the state entered a nolle prosequi thereby causing a second arraignment to occur, in an attempt to bypass the speedy trial statute. This argument is based on the fact that the first and second indictments focus on the same series of events and involve an identical first degree burglary charge. We disagree with defendant and hold that the 180 day statutory mandate has not been violated.

■ At the outset we note that Count I of the original information filed on June 20, 1980, charged robbery in the first degree of a gold plated stethoscope. After that information was nolle prossed on October 23, 1980, and the cause dismissed pursuant to the trial court's order, a second information was filed on December 1, 1980. Count I of that information charged attempted rob-

bery of drugs from the office of Dr. Kehoe. No mention was made of the stethoscope. These two crimes are indeed different offenses; and, in its order denying defendant's motion to dismiss, the trial court found that there was no bad faith on the part of the state in the filing of the nolle prosequi and the filing of the second information. However, because Count II of each information charged the same offense and all charges arose out of the same events on April 13, 1980, we indulge defendant in his argument that the statutory 180 days began to run on the date of his first arraignment, July 18, 1980.[1]

By its own terms, § 545.780 excludes from the 180 day period delays occasioned by hearings on pretrial motions, change of venue, and periods of up to thirty days when any proceeding concerning the defendant is under advisement. From the legal file, we note that defendant filed a motion for a change of venue on July 7, 1980. At the time of his first arraignment, July 18, 1980, the motion was granted and the cause was received in Madison County on July 24, 1980 (6 days). On July 24, 1980, defendant filed a motion to suppress statements against interest which he withdrew on September 4, 1980, upon certain assurances being made to him by the prosecutor (42 days). Upon waiving his second arraignment, defendant filed another motion for a change of venue on December 5, 1980. The motion was granted, and the case was received in Washington County on December 15, 1980 (10 days). Without discussing other delays which are arguably chargeable to the defendant, the exclusion of the foregoing periods, totaling 58 days, compels the conclusion that the first day of the trial, March 10, 1981, was within 180 days of the first arraignment. This point is ruled against defendant.

Defendant's next point is that the trial court erred in not granting a mistrial

when it was brought to his attention that the jury had with them during their deliberations an exhibit which had been marked but not admitted into evidence. The item in question, Exhibit No. 11, was a Xerox copy of a driver's license showing the picture of one Paul Hedrick. Reginald McCarver had testified that Hedrick was one of the men he had unsuccessfully pursued from the crime scene. When the exhibit was offered in evidence, defense counsel objected to it, saying, "I don't know what purpose this has." The objection was sustained. Nevertheless, it appears that the exhibit was carelessly left among the admitted exhibits and taken inadvertently by the jury into the jury room during their deliberations. Defendant claims this was improper, and we agree. Defendant does not explain how this impropriety prejudiced him, other than to argue and cite cases holding that it is prejudicial to permit a jury "to use improper evidence in their deliberations." With this broad statement we also agree, but we note that the operative word is "use." We do not perceive how the jury in this case could have used a copy of a driver's license photograph of a person other than defendant to convict the defendant. Furthermore, the photograph had been described to the jury by Police Chief Thurmond as a copy of a photograph of Hedrick which had been shown to Reginald McCarver; and, as indicated, McCarver testified that the photograph was that of one of the persons he saw leaving the scene. Although the photograph served to place Hedrick at the scene, it could have had no effect on the jury's determination that defendant was there. We conclude that the mere presence of the item in the jury room could not have prejudiced the defendant. *Cf. United States v. Bishop,* 492 F.2d 1361, 1365 (8th Cir.1974), *cert. den.* 419 U.S. 833, 95 S.Ct. 59, 42 L.Ed.2d 59 (1974).

Defendant's next assignment of error is that the trial court erred in allowing the

---

1. A nolle prosequi and the subsequent filing of another information cannot be used as a mechanism by the state to "start all over again time after time" the 180 day limitation. *State v. Lawson,* 630 S.W.2d 185, 189 (Mo.App.1982).

We do not hold that such was the intention of the state in this case, but nevertheless review the matter on the basis of the actual elapsed time between the first arraignment and the commencement of the trial.

state to endorse Robert Ward as a witness on the day of trial and in failing to grant a continuance because of the late endorsement. Aside from the fact that defendant did not request a continuance when the subject of the late endorsement was raised and did not object when Ward testified, it is obvious that Ward's testimony had miniscule impact on the trial of the case and that it clearly came as no surprise to defendant. Ward testified that he was the State Department of Revenue fee agent for St. Francois County and that his duties included titling automobiles and selling license plates. He testified that he issued 1979 truck license plates numbered PJ8–803 to one Tyler Norton and that he also issued passenger auto license YFK–630 to defendant's wife for a 1972 Toyota, with a certain vehicle identification number, and that the same vehicle was later titled in the names of both defendant and Mrs. Sumpter. All of this title and license information had previously been placed before the jury by means of self admitting, certified copies of records of the Department of Revenue. See § 302.312, RSMo 1978. Furthermore, the prosecuting attorney represented to the trial court in a pretrial conference that the identity of the witness and the substance of his expected testimony had been revealed to defense counsel at least fifteen days before trial; defense counsel did not deny the assertion.

■ Defendant, nevertheless, now argues for the first time on appeal that the state's failure to make formal disclosure violated Rule 25.03 and warrants reversal. Defendant objected to the endorsement of Ward in the pretrial conference and in his motion for new trial on the grounds that it was "untimely," in apparent reference to Rule 23.01, which mandates endorsement of material witnesses for the prosecution on the indictment or information. That rule specifically excepts from the endorsement requirement "witnesses who will appear upon the trial for the production or identification of public records..." Rule 23.01(f). Ward's testimony was limited to the contents of the public records of the Department of Revenue discussed above; and, as

such, Ward was within the excepted class of witnesses. See *State v. Janes,* 601 S.W.2d 680 (Mo.App.1980). Defendant did not assert to the trial court a claim of a violation of Rule 25.03 at the time of the endorsement or in the motion for new trial. Such failure would justify our refusal to review the issue as not having been properly preserved. Rule 29.11.

■ We again indulge defendant, however, and consider his claim that the late disclosure that the state intended to call Ward was not in compliance with Rule 25.-03. Although the salutary intent of that rule should be scrupulously protected by the courts, noncompliance by the state does not compel reversal of a conviction as a disciplinary measure against the state where the conviction is the result of a fair trial. *State v. Smothers,* 605 S.W.2d 128, 132 (Mo. banc 1980). At most, the state in this cause was mildly remiss, if at all, in formal compliance with the rule. The defendant was not surprised by the appearance of Ward or his testimony. The testimony itself constituted nothing more than a recitation of the contents of the previously admitted documents relating to the identification of defendant's automobile and Norton's truck. In addition, we note that, even before the license records were admitted and Ward testified, Officer Rawson had testified that when he was responding to the report of the crime in progress he saw Tyler Norton in "his" (Norton's) pick-up truck, license number PJ8–803, in the vicinity of the crime. When Rawson first saw Norton, the pickup was parked with the engine running. After Norton waved to Rawson, Norton left the area at a high rate of speed. Rawson further testified that approximately thirty minutes later he observed the same truck and a Toyota automobile regularly used by defendant parked near Norton's home. Rawson's testimony that the Toyota was defendant's was a matter of Rawson's own knowledge. Ward's testimony as the local Department of Revenue fee agent added nothing to the state's case of which the jury was not aware.

In light of all of these factors, it is clear that defendant's claim of error arising out of the late endorsement of Robert Ward as a witness is without merit.

Defendant's next contention is that the trial court erred in denying his motions for judgments of acquittal at the close of the state's case and of all the evidence. This, for the reason that the information and the evidence subjected him to multiple punishments for the same offense, in violation of his right against double jeopardy. This argument is founded upon defendant's position that the crimes of which he was convicted, attempted robbery in the first degree and burglary in the first degree are, in fact, the "same offense." Defendant argues that such identity of offenses exists here because, as the information was drawn in this case, the "robbery offense is dependent on the State establishing the burglary offense."

■■■ In considering this contention, we turn to the classic statement found in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932):

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

Consonant with the statutory definition of robbery in the first degree, § 569.020, RSMo 1978, and the definition of an attempt to commit an offense, § 564.011, RSMo 1978, the trial court instructed the jury that if it found beyond a reasonable doubt:

"... that such conduct of being armed with and displaying a pistol, threatening its immediate use against Mike McCarver, and removing drugs from the shelves in the office of Dr. Kehoe, was a substantial step toward the commission of the crime of robbery in the first degree of drugs from the office of Dr. James Kehoe

and was done for the purpose of committing such robbery in the first degree, then you will find the defendant guilty under Count I of attempt to commit robbery in the first degree."

For purposes of Count II which charged burglary in the first degree, the trial court defined the crime for the jury in accordance with § 569.160, RSMo 1978 as follows:

"A person commits the crime of burglary in the first degree if he knowingly enters unlawfully in an inhabitable structure for the purpose of committing stealing therein and, while in the inhabitable structure, he or another participant in the crime is armed with a deadly weapon."

From the foregoing, it is apparent that the principal thrust of the robbery charge was the display of the deadly weapon and its threatened use on McCarver together with the removal of the drugs from the shelves. The essence of the burglary charge was the unlawful entry while armed with a deadly weapon for the purpose of stealing. Applying the *Blockburger* test, it is obvious that each crime requires proof of an element that the other does not: removal of the drugs by threat of deadly force against McCarver is not an element of burglary; unlawful entry with intent to steal while armed with a deadly weapon is not an element of robbery. The fact that some evidence of each offense overlaps and is relevant in proving the other does not violate defendant's double jeopardy protections. *State v. Bextermueller,* 643 S.W.2d 292, 295 (Mo.App.1982); *State v. Powell,* 581 S.W.2d 586, 587 (Mo.App.1979). An argument claiming violation of double jeopardy rights of a defendant convicted of first degree burglary and second degree robbery arising out of one series of events was considered and summarily disallowed in *State v. Gregory,* 630 S.W.2d 607, 610 (Mo. App.1982). This point is ruled against defendant.

■■ Defendant's penultimate point is that the statutes which formed the basis for Count I are unconstitutionally vague in that they do not give adequate notice that an attempt to steal property owned by one

person "while using force against another is prohibited conduct." Alternatively, defendant claims that in absence of a showing of force against Dr. Kehoe, the jury was precluded from finding an attempt "to rob items from the offices of Dr. Kehoe." This point borders on the frivolous.

Section 569.020, RSMo 1978, defines robbery in the first degree. For purposes of this case, the definition may be stated as follows: "A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime, . . . is armed with a deadly weapon; or . . . threatens the immediate use of a dangerous instrument against any person; . . ." Section 569.010, RSMo 1978, is also relevant. It provides in part that a person " 'forcibly steals,' and thereby commits robbery, when, in the course of stealing, he uses or threatens the immediate use of physical force upon another person for the purpose of: (a) Preventing or overcoming resistance to the taking of the property . . ." Had these statutes been drafted after the fact in an attempt to describe defendant's conduct, it is doubtful that they could have been better suited to the task.

By its terms, § 569.020 proscribes the use or threat of deadly force directed toward *anyone* during the act of stealing. Section 569.010 specifically contemplates the use of force to prevent or overcome resistance to the taking. After Michael McCarver had been taken by defendant at gunpoint into the doctor's office where an accomplice was removing the drugs from the refrigerator and placing them into sacks, defendant forced McCarver to lie on the floor, placed the gun to McCarver's neck, threatened to kill him, tied McCarver's hands, and later pressed a knife against McCarver's back and told him not to move. Only Officer Rawson's appearance prevented completion of the act of stealing. Defendant's alternative argument is equally devoid of merit. The essence of the crime here was the use and threat of force against McCarver as an expedient in stealing the drugs. That the drugs were not owned by McCarver is irrelevant; the operative fact is that force was used to prevent resistance to the taking. We hold that the statutes which formed the basis for Count I of the indictment leave no doubt as to what they proscribe in terms of this case and meet all constitutional requirements relating to specificity and certainty. See *State ex rel. Eagleton v. McQueen,* 378 S.W.2d 449, 453 (Mo. banc 1964); *Matter of Trapp,* 593 S.W.2d 193, 202 (Mo. banc 1980).

■ Defendant's final point is that the trial court erred in permitting certain testimony by Flat River Police Chief Curtis Thurmond relating to the lineup at which Reginald McCarver identified defendant. Defendant contends that the testimony amounted to impermissible bolstering of McCarver's testimony. Once again, we are confronted at the outset with the fact that defendant did not object to Thurmond's testimony at the trial and did not complain of it in his motion for new trial. Nothing is, therefore, preserved for review. Rule 29.-11. Our review is ex gratia.

■ Thurmond's testimony concerning the lineup was that defendant was one of five men in it and that Reginald McCarver viewed it. Thurmond identified a photograph as an accurate depiction of the lineup. Nothing more. Defendant cites us to *State v. Grady,* 630 S.W.2d 89 (Mo.App. 1982), among others, wherein it was held that, in the absence of prior inconsistent statements as to a defendant's identity by a victim, the state may not produce testimony from another witness that the victim identified the defendant at a lineup. In *Grady,* police officers were permitted to testify that the victim made "positive identifications" from a display of photographs and a lineup, in spite of the fact that the victim's identification testimony at the trial was not impeached by prior inconsistent statements. Admission of the officers' testimony, over defense objection, was error because, as evidence was allowed to develop, "there was no question from the police testimony but that [the victim's] 'positive identification' was of defendant." *Id.,* 90. In the instant case, Thurmond's testimony was simply

that the lineup occurred, defendant was in it, and Reginald McCarver viewed it. This does not constitute impermissible "bolstering." *State v. Williams,* 587 S.W.2d 618, 619 (Mo.App.1979). Defendant's final point is ruled against him.

The judgment is affirmed.

STEWART, P.J., and CRANDALL, J., concur.