**STATE of Missouri, Appellant,**

v.

**Thomas S. GINN, Respondent.**

**No. WD 57803.**

Missouri Court of Appeals, Western District.

Nov. 7, 2000.

Pamela K. Vestal, Asst. Pros. Atty., St. Joseph, for appellant.

Timothy D. Ernst, St. Joseph, for respondent.

Before Presiding Judge LOWENSTEIN, Judge LAURA DENVIR STITH and Judge NEWTON.

LAURA DENVIR STITH, Judge.

On August 26, 1999, a jury convicted Defendant Respondent, Thomas S. Ginn, of delivery of a controlled substance in violation of Section 195.211 RSMo 1994. Subsequently, the court below granted Mr. Ginn's Motion for New Trial on the ground that Mr. Ginn was deprived of his right to a fair trial when the State was allowed, over Mr. Ginn's objection, to cross-examine defense witness John Dudley concerning Mr. Dudley's knowledge of a drug-dealing partnership between Mr. Dudley's nephew and Mr. Ginn. The State appeals, claiming that the trial court abused its discretion in granting Mr. Ginn a new trial in two respects. First, the State claims, Mr. Ginn waived his objection to this line of cross-examination when his counsel participated in a reformulation of the question to only inquire as to "partners" rather than "drug-dealing partners" during a bench conference. Alternatively, the State asserts, even had Mr. Ginn preserved the error for purposes of his motion for new trial, the court abused its discretion because the question alleged to be prejudicial was properly relevant to show bias on the part of the witness, Mr. Dudley.

We find that the trial court acted within its discretion in concluding that the State's question to Mr. Dudley caused Mr. Ginn sufficient prejudice to warrant a new trial. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The evidence adduced at trial was as follows:

On June 24, 1997, Mr. Mark Dydell, a confidential informant for the Buchanan County Drug Strike Force, arranged to purchase an "eight ball" of crack cocaine from Mr. John Dudley for $125.00. Mr. Dydell met Mr. Dudley on that day at the corner of 15th and Charles Streets in Saint Joseph, Missouri. Prior to this meeting, Mr. Dydell met with members of the Buchanan County Drug Strike Force. They searched his person and his vehicle and fitted him with a concealed recording device by which they monitored the subsequent transaction between Mr. Dydell and Mr. Dudley.

Upon meeting at the corner of 15th and Charles Streets as agreed, Mr. Dydell and Mr. Dudley proceeded in Mr. Dydell's vehicle to the corner of 19th and Charles Streets and parked the car. After haggling for a short time over the price of the crack cocaine, Mr. Dydell gave Mr. Dudley $125.00 in cash. Mr. Dudley then exited the vehicle, and, according to Mr. Dydell's later testimony at trial, met with Defendant Thomas Ginn, who had just approached on a bicycle. Mr. Dydell said he saw Mr. Dudley exchange the money with Mr. Ginn for a small amount of crack cocaine, and Mr. Dudley then returned to the car and gave the crack cocaine to Mr. Dydell. Mr. Ginn was later arrested and charged with delivery of a controlled substance.

Mr. Dudley's testimony at trial contradicted that of Mr. Dydell. Mr. Dudley testified on behalf of Mr. Ginn that although he did arrange to sell crack cocaine to Mr. Dydell, and met with Mr. Dydell on the corner of 19th and Charles Streets, he did not obtain the crack cocaine from Mr. Ginn, nor did he even see Mr. Ginn on that day. He testified that, upon meeting Mr. Dydell at the corner of 19th and Charles Streets, he went "around the corner" from Mr. Dydell's vehicle, purchased the crack cocaine from an unnamed source "not Mr. Ginn" and returned to the vehicle to deliver the cocaine to Mr. Dydell.

On cross-examination of Mr. Dudley, the prosecutor asked Mr. Dudley whether he knew that his nephew, Roy Dudley, sold drugs. Mr. Dudley answered that he did have such knowledge. The prosecutor then proceeded to ask Mr. Dudley whether he knew that Defendant and his nephew were "partners in drug-dealing." Before the witness could answer counsel for Mr. Ginn objected and the attorneys conferred with the court outside the hearing of the jury.

During the bench conference, counsel for Mr. Ginn objected to the State's inquiry on the ground that the question involved collateral issues of uncharged prior misconduct on the part of Mr. Ginn, and that the prejudicial effect of the evidence outweighed its probative value. The court noted that the reason the prosecutor was asking the question was "for the purpose of showing bias on behalf of a witness that you have called ... because of your client's relationship with his nephew," thus indicating that the court believed that it was appropriate to ask a question such as this since it went to the witness' bias. Counsel for Mr. Ginn then suggested that the prosecutor "could have just done that by just saying that he was friends or partners with Mr. Roy Dudley without bringing in this issue of them being partners for drug deals ... You can talk about partners or friends without talking about participating ...". At that point, the prosecutor said she would rephrase the question "just saying partners" and the court said "All right. I think that's the better course, in all candor." Defense counsel was silent following this ruling.

The proceedings then returned to open court. The prosecutor inquired of Mr. Dudley whether he had knowledge that during the "time frame" of June 24, 1997, Mr. Ginn and Roy Dudley "were partners." Mr. Dudley testified that he did,

indeed, have such knowledge. Counsel for Mr. Ginn made no further objection to the question in this form, nor did he request that the Court give a limiting instruction to the jury, or ask that the Court instruct the jury to disregard the prior unanswered question about a drug-dealing partnership, as the question was originally posited to Mr. Dudley.

Mr. Ginn was subsequently convicted by the jury of delivery of a controlled substance in violation of Section 195.211. After trial, Mr. Ginn timely filed a Motion for Judgment of Acquittal, or in the Alternative, for a New Trial. Paragraph Six of that motion alleged that the trial court erred in allowing the prosecution to cross-examine Mr. Dudley, over Mr. Ginn's objection, regarding Mr. Ginn's association with Roy Dudley, in that the Court allowed the jury to be exposed to evidence of Mr. Ginn's prior uncharged acts of criminal misconduct, and further that the prejudicial effect of the evidence far outweighed any probative value it might have had. On October 8, 1999, the trial court entered an order granting Mr. Ginn a new trial, stating:

> [I]n permitting the state to cross-examine, over the defendant's objection, the defendant's witness John Dudley, regarding Dudley's knowledge of the partnership between the defendant and Dudley's nephew, whom he believed to be a drug dealer, the defendant's right to a fair trial was prejudiced and ... good cause exists for the Court's grant of a new trial in accordance with Missouri Supreme Court Rule 29.11.

The State appeals the trial court's grant of a new trial to Mr. Ginn.

## II. STANDARD OF REVIEW

■ As this Court noted in *Duckett v. Troester,* 996 S.W.2d 641 (Mo.App. W.D. 1999):

"A trial court has great discretion in determining whether to grant a new trial." *McGraw v. Andes,* 978 S.W.2d 794, 801

(Mo.App.1998). Its decision is presumed to be correct and will be reversed on appeal only for an abuse of discretion. *Id.* An abuse of discretion occurs where the trial court's ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id.* 'It cannot be said that the trial court abused its discretion where reasonable persons could differ over the propriety of its ruling.' *Id.* However, the granting of a motion for a new trial can be an abuse of discretion where it is based on findings that are not substantially supported by the record. *VonSande v. VonSande,* 858 S.W.2d 233, 237 (Mo.App.1993).

■ " 'In order for the trial court to grant a motion for new trial, the error complained of as a basis for the motion must be prejudicial to the party seeking the new trial.' *Balke v. Central Mo. Elec. Coop.,* 966 S.W.2d 15, 25 (Mo.App.1997). The complaining party must show that some trial error or misconduct of the prevailing party was responsible for prejudicing the jury. *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 372 (Mo. banc 1993); *Norris v. Barnes,* 957 S.W.2d 524, 528 (Mo. App.1997)." *Duckett,* 996 S.W.2d at 646–47.

## III. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN GRANTING DEFENDANT'S MOTION FOR NEW TRIAL

■ The State argues that the trial court erred in granting a new trial on the basis of prejudice stemming from the State's cross-examination of Mr. Dudley concerning his knowledge of a drug-dealing partnership between his nephew and Defendant Ginn because Mr. Ginn "waived" his objection to the question when his counsel participated in reformulating the question during the bench conference on the objection. The State also asserts that even if Mr. Ginn did not "waive" this allegation of error, the trial court abused its discretion in granting a new trial because the question about a

drug partnership was sufficiently relevant to showing bias on the part of Mr. Dudley to overcome its prejudicial impact. We reject both arguments.

The relevant exchange between counsel and the witness, John Dudley, was as follows:

Q. Do you know a Roy Dudley?

A. Roy Dudley is my nephew.

Q. And do you know that Roy Dudley runs around with Thomas Ginn?

A. Yes, I am aware of that.

Q. Okay, and you also know that Roy Dudley deals drugs.

A. Yes, I know that also.

. . . .

Q. And you also know that Roy and Thomas Ginn, the defendant, were partners in drug-dealing?

MR. ERNST: Judge, I'm going to object. May we approach?

After counsel approached the bench, the following exchange occurred between the court and counsel:

MR. ERNST: Judge, this involves uncharged bad acts and is a totally collateral issue which has no relevance to these charges and it's prejudicial without having any probative value. . . . Judge, we're getting into a totally collateral issue by opening up someone else's drug-dealing activities. Whether or not there is any proof that they were partners or working together is starting to get into uncharged bad acts and it's just trying to paint him as a bad person who associates with someone else who has testified to drug-dealing.

THE COURT: She's asking for the purpose of showing bias on behalf of a witness that you have called by the reason that she is suggesting that he hasn't been testifying truthfully because of your client's relationship with his nephew . . .

MR. ERNST: She could have just done that by just saying that he was friends or partners with Mr. Roy Dudley without bringing in this issue of them being partners for drug deals. . . . You can talk about partners or friends without talking about participating . . .

MS. VESTAL: Your Honor, I'll rephrase it just saying partners.

THE COURT: All right. I think that's the better course, in all candor. We really don't need a problem at this stage, so I think this is probably a good course. Thank you.

As is evident, Mr. Ginn's counsel made a clear objection at the time the offending question was initially asked. When the trial court indicated he would overrule the objection to any questioning about the witness' relationship with defendant's nephew, because their relationship was relevant to show bias, defense counsel did not withdraw his objection as the State now suggests, but rather simply suggested that there were other ways the issue could have been raised without causing prejudice by referring to unrelated drug transactions. Counsel did not suggest that a subsequent rephrasing of the question by the prosecutor in a less objectionable manner would alleviate the prejudice already caused by the question previously asked.

■ It was at this point that the prosecutor said she would rephrase the question and the court said the prosecutor could do so. While defense counsel's silence at this point and failure to object to the rephrased question constituted acquiescence in the second question, counsel never agreed that the rephrasing negated any prejudice caused by the initial question and so never affirmatively waived any error in asking the initial question.

■ Thus, the issue becomes whether the State is right in arguing that the trial court abused its discretion in granting a new trial because the question asked of Mr. Dudley was sufficiently relevant to demonstrating his bias that it was not unduly prejudicial when considered in light

of the purpose for asking it. We do not agree with the State that the trial court abused its discretion in holding that, in the context of the trial, the prejudicial effect of the question outweighed its probative value. It is well-settled that a trial court has discretionary power to grant a new trial because of an erroneous trial ruling, whether or not an objection was timely made. As *Steward v. Goetz*, 945 S.W.2d 520 (Mo.App.1997), set out the rule:

> "On appeal when a party claims error because the trial court *denied* that party a new trial, the party ordinarily must have made a proper and timely objection to the claimed error to preserve it for review; but, when, as here, a party claims error because the trial court *granted* the opposing party a new trial, the opposing party need not have made an objection to the error upon which the trial court granted a new trial. *Farley v. Johnny Londoff Chevrolet, Inc.*, 673 S.W.2d 800, 804 (Mo.App.1984). A trial court has the right, in the proper exercise of its discretionary power, to grant a new trial on account of any erroneous ruling, whether an objection has been made nor not. *Beer v. Martel*, 332 Mo. 53, 55 S.W.2d 482, 485 (1932). *See* Rules 78.01 and 78.08."

*Id.* at 527–28. Rule 78.01 states in relevant part that "The court may grant a new trial of any issue upon good cause shown." Rule 78.08 states that "[p]lain errors affecting substantial rights may be considered at a hearing on motion for a new trial, in the discretion of the court, though not raised in the motion or defectively raised, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *See also Hill v. Hyde*, 14 S.W.3d 294 (Mo.App. W.D.2000) (finding no error in the trial court's failure to treat the appellant's objection "upon which the trial court ultimately based its grant of a new trial" as having been waived, despite the fact that appellant failed to timely raise the objection during trial). *Accord, Blackman v. Botsch*, 281 S.W.2d 532, 535 (Mo.App.1955).

Evidence otherwise relevant and admissible should be excluded if the evidence "brings into a case matters which cause prejudice wholly disproportionate to the value and usefulness of the offered evidence." *State v. Pollard*, 719 S.W.2d 38, 39 (Mo.App.1986). Although unanswered questions are not usually deemed so prejudicial as to require a new trial, they can cause this degree of prejudice. *See State v. McClanahan*, 954 S.W.2d 476, 478 (Mo.App. W.D.1997). In *State v. Dunn*, 577 S.W.2d 649, 651 (Mo. banc 1979), for example, the court held that asking a question that contains detailed information about a prior crime may require a new trial because in some such cases "it is not the answer which prejudices the defendant, it is the question that carries the poison .... the jury must, as reasonable persons, conclude that the question is based upon information known to the questioner." *Id.* at 650. Further, it is well-settled that evidence of specific instances of conduct relating to other crimes, wrongs, or acts is generally inadmissible to prove character or as the basis of an inference that an accused acted in conformity with his prior misconduct on the occasion in question. *See State v. Wright*, 582 S.W.2d 275, 277 (Mo. banc 1979). Thus, the trial court could, in its discretion, have determined that the prosecutor's initial question, making reference to a "drug-dealing" partnership between Defendant Ginn and Roy Dudley, was sufficiently prejudicial, whether considered alone or in conjunction with the second question, to undermine the fundamental fairness of the trial, thereby warranting the grant of a new trial, because it went beyond impeaching the witness' credibility by showing that Defendant was in business with the witness' nephew, and instead brought prior instances of Mr. Ginn's criminal conduct before the jury for the purpose of showing his propensity to commit the crime in question.

For these reasons, the judgment of the trial court granting a new trial is affirmed.

Presiding Judge HAROLD L. LOWENSTEIN and Judge THOMAS H. NEWTON, concur.