**STATE of Missouri, Respondent,**

v.

**Leonard C. THOMPSON, Appellant.**

**No. 25596.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 28, 2004.

Daniel E. Hunt, Bandre, Hunt Snider, L.L.C., Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Appellant Leonard C. Thompson ("Appellant") appeals his conviction for two counts of the Class B misdemeanor of negligent operation of a vessel, violations of section 306.111.1, and one count of the Class D felony of leaving the scene of a vessel accident, a violation of section

306.141.[1] After the trial court denied his motion for new trial and judgment of acquittal notwithstanding the verdict, Appellant was sentenced to concurrent terms of three months in jail on each count of negligent operation of a vessel and one year in jail for leaving the scene of a vessel accident.

 " 'A trial court has great discretion in determining whether to grant a new trial.' " *State v. Ginn*, 31 S.W.3d 454, 457 (Mo.App.2000) (quoting *McGraw v. Andes*, 978 S.W.2d 794, 801 (Mo.App. 1998)). "Its decision is presumed to be correct and will be reversed on appeal only for an abuse of discretion." *Id.* "In order for the trial court to grant a motion for new trial, the error complained of as a basis for the motion must be prejudicial to the party seeking the new trial." *Balke v. Central Mo. Elec. Coop.*, 966 S.W.2d 15, 25 (Mo.App.1997). "The complaining party must show that some trial error or misconduct of the prevailing party was responsible for prejudicing the jury." *Ginn*, 31 S.W.3d at 457.

 In determining "whether to grant [Appellant's] motion for judgment of acquittal notwithstanding the jury's verdict, the trial court was required to view the evidence and inferences in the light most favorable to the verdict and disregard all contrary evidence and contrary inferences." *State v. Couch*, 793 S.W.2d 599, 601 (Mo.App.1990). "With the evidence so viewed, the trial court was then required to determine whether the evidence was sufficient for twelve reasonable persons to have found the defendant guilty as charged beyond a reasonable doubt." *Id.* " 'A reasonable doubt is a doubt based upon reason ... and proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.' " *Id.* (quoting *State v. Nichols*, 725 S.W.2d 927, 930 (Mo.App.1987)). "Credibility of witnesses and inconsistencies in testimony are for the jury to consider." *State v. West*, 939 S.W.2d 399, 401 (Mo.App.1996).

Viewing the evidence in the light most favorable to the jury's verdict, *State v. Smith*, 81 S.W.3d 657, 659 (Mo.App.2002), the record reveals that on the evening of July 28, 2000, Appellant parked his boat at Aqua Pizza, a restaurant located on the Lake of the Ozarks in Camden County, Missouri.[2] During the course of serving drinks to people on his boat and "partying", Appellant came into contact with Dacia Baumli ("Baumli") and Marney Nieters ("Nieters"). At approximately 3:00 a.m., Nieters asked Appellant if he could give her and Baumli a ride back to the location where their vehicles were parked. Appellant agreed.

At some point during the boat trip, Baumli and Nieters were both in the below deck portion of Appellant's boat when Appellant came down to join them. Baumli stated that Appellant remained below deck "messing with the stereo" for three or four minutes. Nieters testified that she asked Appellant "if you could actually leave the steering wheel of a boat while it was running" and he replied that "it was fine." While Appellant and Baumli remained downstairs, Nieters went topside. When Nieters reached the cockpit of the boat, "the boat was meandering, idling around and headed toward the shore." The boat was within one hundred feet of the shore before Nieters was able to turn the steering wheel and point the boat away from

---

1. Statutory references are to RSMo 2000, unless otherwise indicated. Rule references are to Missouri Court Rules (2004), unless otherwise indicated.

2. Aqua Pizza is a floating restaurant that is inaccessible from land and surrounded by a large boat dock.

the shore. Thereafter, Nieters "ran down to try to get [Appellant] to come back and drive the boat, because [she] didn't know how to drive [the boat]."

Appellant returned to the steering wheel "a minute later" and once behind the wheel, "he started increasing his speed." According to Nieters, Appellant "flipped on the GPS because he didn't know where we were" and in her opinion, the boat "appeared . . . to be going fairly fast, if not as fast as it would go." Nieters, who was concerned about the poor visibility on the lake due to the late hour and the fact that "[i]t was misting, kind of rainey [sic], foggy" outside, asked Appellant to slow down. Nieters testified the speed limit on the lake was thirty miles per hour and she observed that the speedometer on Appellant's boat registered thirty-eight miles per hour. She again warned Appellant about his speed and reminded him that the water patrol had been vigilantly enforcing the speed limit; but according to Nieters, Appellant commented that he knew the water patrol officers and failed to slow the boat down. Despite her repeated requests to slow down, Appellant "quit paying attention" to Nieters and turned away from her.

As the boat came up on a toll bridge, Appellant "slowed down to an idle . . . [a]nd then [they] went through the bridge and as soon as [they] were through the bridge and away from the pylons [Appellant] full throttled again" and accelerated to thirty-eight miles per hour. According to Nieters, the boat was traveling at such a fast rate that it "was on plane" and riding on top of the water.

Suddenly, the boat impacted dry land. Nieters "flew forward" and "then [the boat] turned on it's [sic] side." Nieters, who was unaware that they had hit dry land, rushed downstairs to check on Baumli, and requested lifejackets from Appel-

lant because she believed that the boat was sinking. Baumli stated the impact of the crash sent things flying around the cabin, including a TV, and the boat was tilted to the side in such a way that she had a difficult time climbing the stairway. It was not until several minutes later that Baumli and Nieters determined the boat had collided with the shoreline of the Porto Cima golf course.

Following the impact, Appellant tried to "drive the boat off the golf course" even though one of the propellers was out of the water. The boat did not move. Nieters and Baumli had to climb down the boat's bumper and jump about seven feet to the ground in order to exit the vessel. The women then told Appellant that they were going to call the water patrol using Baumli's cellular phone and Appellant, who was "[s]taggering," took off into the shadows before the authorities arrived. Nieters, who hit the boat's dashboard, suffered "bruises and bumps and scratches;" an injury to her stomach; a "[l]arge black and blue mark" across her chest; and a cut to her foot. The force of the impact caused Baumli to be thrown from her position on the couch and as a result she suffered a scraped ankle; lots of bruises; and, various injuries to her neck, back and ankle.

James Pragman ("Pragman") and Todd Hurt ("Hurt") of the Missouri State Water Patrol arrived on the scene twenty to thirty minutes after the accident. Pragman testified that when he arrived at the scene he "saw a white boat, 44 foot Searay cruiser sitting on the bank located at the Porto CIMA Golf Course. Approximately 42 feet of that 44 foot boat was sitting on the bank. Only about two foot [sic] of it was sitting in the water." Hurt stated that when the boat ran onto the bank it cut a water line and caused a lot of damage to the grass on the edge of the golf course. When Pragman and Hurt were unable to

find Appellant at the scene, they visited his home, however, they did not find him at that location either. The following day, Appellant telephoned the water patrol and informed them that he was not injured and that he would not answer any questions about the boat wreck.

Appellant did not testify at trial. Appellant was convicted of the three criminal counts detailed above, and was sentenced to concurrent terms of three months on each count of negligent operation of a vessel and one year in jail for leaving the scene of a vessel accident.

Appellant alleges seven points of trial court error.

Appellant's first two points maintain the trial court erred in denying his request for a directed verdict. First, Appellant asserts that a directed verdict was appropriate because "venue was not established in that it [sic] there was no evidence presented that the crime occurred in Camden County, Missouri." Second, Appellant asserts there should have been a directed verdict granted on Counts I and II because the State failed to prove Appellant was intoxicated at the time of the boat wreck. Appellant's third and fourth points posit error in the jury instructions utilized by the trial court. Specifically, Appellant maintains "the jury instructions were incorrect" and that "the jury was misinstructed," because Appellant was convicted of two counts of negligent operation of a vessel which resulted in "convicting Appellant of the same crime twice." Appellant's fourth point asserts that the Count II verdict director was erroneous "because it did not reflect what was charged in the information in that it inserted the language of knowledge of property damage rather than knowledge of bodily injury as was charged." Appellant's fifth point posits the trial court erred in not specifically answering a note from the jury that dem-

onstrated that the jury was confused about the instructions given to it by the trial court. In his sixth and seventh points, Appellant challenges the sufficiency of the evidence to support his conviction: his sixth point asserts that the State did not prove beyond a reasonable doubt that Appellant knew he had caused damage to the golf course; and the seventh point posits the State failed to prove that there was actual property damage to the golf course. We review each point seriatim.

In his first point on appeal, Appellant maintains the State failed to prove that venue was proper. Specifically, he argues that the Lake of the Ozarks is a large lake which spans four counties and "[t]he State offered no evidence as to whether or not the peninsula that was struck by the Appellant's boat was in Camden County."

 We note that "[w]hile venue must be proved, it is not an integral part of an offense and thus need not be proven beyond a reasonable doubt or by direct evidence; instead, venue may be inferred from all the evidence." *State v. Lingar*, 726 S.W.2d 728, 732 (Mo. banc 1987) (footnote omitted). However, "even if the evidence is inadequate to allow venue to be inferred, venue is a personal prerogative which is waived by proceeding to trial without objection." *State v. Mack*, 903 S.W.2d 623, 627 (Mo.App.1995) (superceded on other grounds by *State v. Anders*, 975 S.W.2d 462, 465 (Mo.App.1998)). An objection to venue made for the first time at the close of the State's case or at the close of all the evidence comes too late. *Id.*

 Appellant raised this issue for the first time in his "Motion for Judgment of Acquittal Notwithstanding the Verdict, or, alternatively, for a New Trial." The record is void of any other reference by Appellant on the issue of venue, and there is

no explanation as to why it was not raised earlier. If Appellant was truly concerned about whether venue was proper, he had ample opportunity to raise the issue prior to trial. *See* Rule 24.04; *see also State v. Harper*, 778 S.W.2d 836, 838 (Mo.App. 1989). Point One is denied.

In Appellant's second point, he maintains the trial court "should have granted Appellant's motion for directed verdict of acquittal as to Counts I and II [corresponding to Jury Instructions 5 and 8, each of which charged Appellant with assault with a vessel in the second degree as proscribed by section 306.111.4] because the State failed to offer any evidence of intoxication, which was an essential element of those Counts." Without citation to authority, Appellant argues that even though the jury "acquitted him of the two counts involving intoxication," there was trial court error in not directing a verdict in his favor because he was ultimately convicted of "lesser-included offenses corresponding to the two intoxication offenses" i.e., negligent operation of a vessel, as set out in Jury Instructions numbered 7 and 10. *See* § 306.111.1.

 " 'A directed verdict of acquittal is authorized only where there is insufficient evidence to support a guilty verdict.' " *State v. Holloway*, 992 S.W.2d 886, 889 (Mo.App.1999) (quoting *State v. Morovitz*, 867 S.W.2d 506, 508 (Mo. banc 1993)). "On review of a motion to direct a verdict of acquittal, we look only to whether there was sufficient evidence from which reasonable persons could have found [Appellant] guilty beyond a reasonable doubt." *State v. Perry*, 954 S.W.2d 554, 558 (Mo.App. 1997). " 'In evaluating this issue, trial and appellate courts must view the evidence and all of its reasonable inferences in the light most favorable to the State....' " *Holloway*, 992 S.W.2d at 889 (quoting *Morovitz*, 867 S.W.2d at 508). As previously

related, "Credibility and weight of testimony are for the jury to determine [and it] may believe all, some or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Shinn*, 921 S.W.2d 70, 73 (Mo.App.1996).

As we perceive it, the crux of Appellant's argument is that the trial court should not have permitted the jury to be given the opportunity to consider the lesser-included offenses, i.e., negligent operation of a vessel, because there was no evidence of intoxication supporting Counts I and II, and Appellant would have otherwise "been acquitted on Counts I and II outright."

 We determine, as explained below, that the offenses of which Appellant was convicted, i.e., negligent operation of a vessel, did not require a finding of intoxication and, therefore, Appellant's contention is moot.

 We are aware that " '[d]ue process requires that a defendant may not be convicted of an offense which is not charged in the indictment or information.' " *State v. Hagan*, 79 S.W.3d 447, 455 (Mo.App.2002) (quoting *Brooks v. State*, 51 S.W.3d 909, 914 (Mo.App.2001)). "A trial court may not instruct on an offense that is not contained in the indictment or information, unless it is a lesser included offense." *Brooks*, 51 S.W.3d at 914. Nevertheless, "[e]very information or indictment puts the defendant on notice, for due process purposes, of all offenses included in the offense charged." *State v. Hibler*, 5 S.W.3d 147, 150 (Mo. banc 1999).

 Section 556.046 establishes a defendant may be convicted of a lesser included offense of the crime with which he was charged in the original indictment or information. Under section 556.046, an offense is a lesser included offense if: (1)

the offense is established by proof of the same or less than all of the facts required to prove the offense charged; (2) the offense is specifically denominated by statute as a lesser degree of the offense charged; or (3) the offense consists of an attempt to commit the offense charged. Further, "[t]he court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."[3] § 556.046.2.

In the information filed against Appellant, Appellant was charged with violating section 306.111.4, "the class D felony of assault in the second degree: operating a vessel while intoxicated" and acting "with criminal negligence",[4] which resulted in physical injury to both Nieters, as set out in Count I, and Baumli, as set out in Count II.[5] Appellant was acquitted of each such charge by the jury, but was convicted of the lesser included offenses of negligent operation of a vessel proscribed by section 306.111.1.[6]

Each charge of second degree assault required proof of intoxication, a fact which the respective negligence charges did not require. Requiring less than all of the facts establishing second degree assault, each negligence charge was, therefore, a lesser included offense of each second degree assault charge, as defined by section 556.046.1(1). The trial court did not err in refusing to direct a verdict in favor of Appellant as to Counts I and II as charged. Point two is denied.

Appellant's third point posits the jury instructions relating to Counts I and II were incorrect, and led to his conviction "of the same crime twice." Appellant argues "[t]he corpus of the crime of Negligent Operation of a Vessel is the operation of the vessel, not the name of the injured party." Therefore, as Appellant views it, the trial court erred in allowing the jury to consider jury instructions relating to both Counts I and II.

Although not characterized as such by Appellant, we agree with the State's char-

---

3. It is not proper to instruct the jury on a lesser offense unless it is impossible to commit the greater offense without first committing the lesser included offense. *State v. Garms*, 750 S.W.2d 702, 704 (Mo.App.1988). In Missouri, the comparison process is often called the statutory elements test; in effect, all of the statutory elements of the proposed lesser included offense must be encompassed by the statutory elements of the greater offense. *See State v. Kirkland*, 684 S.W.2d 402, 406 (Mo.App.1984). Said another way, a "lesser offense is not included in a greater unless it is impossible to commit the greater offense without first committing the lesser." *Id.* (quoting *State v. Seddens*, 624 S.W.2d 470, 473 (Mo.App.1981)).

4. "A person 'acts with criminal negligence' or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a

reasonable person would exercise in the situation." § 562.016.5.

5. Section 306.111.4 states:

A person commits the crime of assault with a vessel in the second degree if, while in an intoxicated condition, he operates any vessel on the Mississippi River, Missouri River or the lakes of this state and, when so operating, acts with criminal negligence to cause physical injury to any other person. Assault with a vessel in the second degree is a class D felony.

6. Section 306.111.1 states in pertinent part:

A person commits the crime of negligent operation of a vessel if when operating a vessel on the Mississippi River, Missouri River or the lakes of this state he acts with criminal negligence, as defined in subsection 5 of section 562.016, RSMo, to cause *physical injury to any other person or damage to the property of any other person.* (Emphasis added.)

acterization that Appellant's argument is essentially a double jeopardy complaint, as Appellant maintains that he committed but a single act of operating a vessel, yet was convicted of two counts of negligent operation of a vessel for causing injuries to Baumli and Nieters.

"Beyond simply protecting defendants from successive prosecutions for the same offense after an acquittal or a conviction, the Fifth Amendment also prohibits multiple punishments for the same offense." *Hagan v. State,* 836 S.W.2d 459, 462 (Mo. banc 1992). We note that "a defendant may be subject to multiple convictions for violation of the same statute if the defendant has in law and fact committed separate crimes." *State v. Barber,* 37 S.W.3d 400, 403 (Mo.App.2001). "The fact that some evidence of each offense overlaps does not violate defendant's double jeopardy protections." *State v. Sumpter,* 655 S.W.2d 726, 731 (Mo.App.1983).

To determine whether the legislature intended multiple punishments, a court looks first to the "unit of prosecution" allowed by the statute under which the defendant was charged. *See Barber,* 37 S.W.3d at 403. "Only where the charging statute is silent as to the unit of prosecution must recourse be made to Missouri's general cumulative punishment statute, sec. 556.041, RSMo." *State v. French,* 79 S.W.3d 896, 899 (Mo. banc 2002).

Given the circumstances of this case, there is no need to have recourse to the general cumulative punishment statute. Here, section 306.111.1, the statute under which Appellant was convicted, provides in pertinent part:

A person commits the crime of negligent operation of a vessel if when operating a vessel on the ... lakes of this state he acts with criminal negligence, as defined

in Subsection 5 of section 562.016, RSMo, to cause physical injury *to any other person or damage to the property of any other person.* (Emphasis added.)

It is our view that the statute clearly criminalizes an act of negligent operation of a vessel in the course of which a defendant has injured "any other person." We agree with the State's conclusion that since the crime is defined with reference to a victim and where there is more than one victim, as is the case in the instant matter, section 306.111.1 allows for more than one allowable unit of prosecution. Accordingly, we determine Appellant's double jeopardy rights were not violated because he was convicted of two counts of negligent operation of a vessel causing physical injury to two, separate passengers on his boat, thereby committing in law and in fact, two separate crimes. *See State v. Murphy,* 989 S.W.2d 637, 639 (Mo.App.1999). Point denied.

In his fourth point on appeal, Appellant maintains the trial court erred in submitting Jury Instruction No. 11, the Count III verdict director, to the jury. Specifically, Appellant asserts the insertion of "the language of knowledge of property damage rather than knowledge of bodily injury" created an error. Unfortunately, Appellant's allegation was not preserved for appellate review in that the instruction about which Appellant complains was not set out in the text of the argument portion of his brief. *State v. Clayton,* 995 S.W.2d 468, 483 (Mo. banc 1999). Rule 84.04(e) states: "If a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief." The rule is made applicable in criminal appeals pursuant to Rule 30.06(d). Accordingly, Appellant's fourth point is denied.

In his fifth point, Appellant asserts the trial court erred in "not answering the

note from the jury." He maintains the question posed by the jury clearly demonstrated the jurors were confused about the instruction, therefore the trial court had "a duty to respond with accuracy" to their question. According to Appellant, had the trial court responded with a mere affirmative response, such as a simple "yes," "it is likely that [the jury] would have acquitted the Appellant."

The record reveals that during their deliberations, the jury submitted a note to the court which contained the following question, "Instruction 11, item 3 states 'that defendant knew that injury was caused to the property of another, the Porto Cima golf course' does defendant have to be aware that he damaged 'Porto Cima'?" In response, the trial court replied, "The law to guide your deliberations is stated in the instructions. Please return to your deliberations."

■■■■■ "The response to a jury question is within the sound discretion of the trial court and the practice of exchanging communications between the judge and jury is not commended." *State v. Guinn*, 58 S.W.3d 538, 548 (Mo.App.2001). Where jury instructions are correct, clear, and unambiguous, a trial court may respond to a jury's question by instructing them to look to the instructions for guidance. *State v. Johnston*, 957 S.W.2d 734, 752 (Mo. banc 1997). "Neutral and generic responses about being guided by the evidence presented and to follow the instructions previously given are therefore not only the safest but the most favored." *Guinn*, 58 S.W.3d at 548. Conversely,

when a jury expresses confusion about jury instructions, the trial judge should respond "with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946); *State v. Clay*, 975 S.W.2d 121, 134 (Mo. banc 1998).

■■■■■ Here, not only did Appellant fail to preserve this issue for our review by not including it in his motion for new trial, but Appellant has also failed to include the portion of the transcript dealing with this issue.[7] Save for exceptions not applicable here, allegations of error in a jury-tried case must be included in a motion for new trial to be preserved for appellate review. Rule 29.11(d). A claim of error not raised in a motion for new trial is not preserved for our review. *State v. Pennington*, 24 S.W.3d 185, 188 (Mo.App.2000). Thus, our review of Appellant's claim, if any, would be limited to plain error review under Rule 30.20. The plain error rule should be used sparingly. It does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Carr*, 50 S.W.3d 848, 853 (Mo.App. 2001). "Relief under the rule will only be granted if a defendant can show the action of the trial court was not only erroneous, but also the error so substantially impacted his rights that manifest injustice or miscarriage of justice will inexorably result if the error is left uncorrected." *State v. Kohser*, 46 S.W.3d 108, 111 (Mo.App.2001). "Plain errors are those which are evident, obvious, and clear." *Id.*

---

7. We note that "[i]t is [A]ppellant's responsibility to prepare a complete record on appeal." *State v. Dunn*, 817 S.W.2d 241, 244 (Mo. banc 1991). " 'Failure to supply a sufficient record to permit determination of the issues presented results in the appellate court being unable to determine if the trial court erred and requires that the point be denied.' "

*State v. Sullivan*, 935 S.W.2d 747, 760 (Mo. App.1996) (quoting *State v. Chowning*, 866 S.W.2d 165, 169 (Mo.App.1993)). Further, when transcripts and exhibits are omitted from the record, this Court can infer that the transcript would not be helpful to Appellant's claim. *See Ludwig v. State*, 771 S.W.2d 373, 374 (Mo.App.1989).

■ On the face of Appellant's allegations we fail to see that substantial grounds exist for believing that the trial court committed a plain error affecting Appellant's substantial rights. *See State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App.2001). Therefore, we decline plain error review. Point five is denied.

Appellant's sixth point relates to Appellant's conviction of leaving the scene of a vessel accident after causing property damage to the Porto Cima golf course. *See* § 306.141.[8] He maintains the State did not prove beyond a reasonable doubt that he knew he had "injured" the golf course. Appellant asserts that lack of evidence showing his actual knowledge of the property damage erroneously led to his conviction. Appellant fails to cite any authority for such a proposition.

■ Quoting *State v. Givens,* 917 S.W.2d 215, 216–17 (Mo.App.1996), Appellant correctly asserts "[t]he [S]tate must prove every element of the crime charged beyond a reasonable doubt," however, Appellant fails to recognize that "[i]n addressing a challenge to the sufficiency of the evidence, an appellate court accepts as true all evidence, whether direct or circumstantial, which tends to prove a defendant guilty together with all reasonable inferences supportive of the verdict." *State v. Fleer,* 851 S.W.2d 582, 598 (Mo. App.1993). This standard applies "[e]ven where [as here] evidence of a defendant's guilt is solely circumstantial. . . ." *State v. Hayes,* 15 S.W.3d 779, 782 (Mo.App.2000) (quoting *State v. Myszka,* 963 S.W.2d 19, 23 (Mo.App.1998)). We disregard contrary evidence and inferences. *State v. Cunningham,* 32 S.W.3d 217, 218 (Mo.App. 2000). "The scope of our review is narrowed to a determination of whether the jury had substantial evidence from which to find [Appellant] guilty beyond a reasonable doubt." *State v. Mitchell,* 975 S.W.2d 191, 194 (Mo.App.1998). " 'Substantial evidence is evidence from which the trier of fact reasonably can find the issue in harmony with the evidence.' " *Myszka,* 963 S.W.2d at 22 (quoting *State v. Franklin,* 854 S.W.2d 55, 57 (Mo.App.1993)).

■ With that being said, we determine there was substantial evidence elicited which would support the proposition that Appellant knew he had caused damage to the golf course property. There was testimony at trial that the approximately twenty thousand pound boat collided with the land while traveling at a high speed; that it created a loud noise upon its impact with the shore; and, that it turned over on one of its sides. Not only was

---

**8.** Section 306.141. provides that:

1. A person commits the crime of leaving the scene of a vessel accident if:

(1) The person is an operator of a vessel on a waterway;

(2) The person knows that an injury was caused to another person or to the property of another person, due to the person's action, whether purposefully, negligently or accidentally; and

(3) The person leaves the place of the injury, damage, or accident without stopping and giving the following information to the other party or to a water patrol officer or other law enforcement officer or, if no officer is in the vicinity, then without delay to the nearest police station or judicial officer:

(a) The operator's name;

(b) The operator's residence, including city and street number;

(c) The vessel registration number; and

(d) The operator's license number for any license issued under chapter 302, RSMo.

2. Leaving the scene of a vessel accident is a class A misdemeanor, unless:

(1) The defendant has previously pled guilty to, or been found guilty of, a violation of this section; or

(2) The accident resulted in physical injury to another person. In which cases, leaving the scene of a vessel accident is a class D felony.

ninety-eight percent of the boat's forty-four-foot hull on dry land, but one of the previously moving propellers was resting on the ground. Furthermore, the boat cut a water line on the shore and caused damage to the grass growing on the golf course. Additionally, Nieters and Baumli expressed their concern about the situation and informed Appellant of their injuries. When Nieters declared she was going to call the water patrol, Appellant fled the scene. "Appellant's behavior indicated he was aware he caused property damage. His rapid departure from the scene without first determining the exact nature of the damage infers he knew property damage occurred." *State v. Watson*, 968 S.W.2d 249, 252 (Mo.App.1998). Furthermore, " '[a] jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit, and may believe or disbelieve all, part, or none of the testimony of any witness.' " *State v. Immekus*, 28 S.W.3d 421, 426 (Mo.App.2000) (quoting *State v. White*, 847 S.W.2d 929, 933 (Mo. App.1993)). It is our view that the State presented sufficient evidence from which a reasonable juror could have found that Appellant knew he caused property damage "to the property of another person" under section 306.141.1(2), when he left the scene of a vessel accident without properly notifying an official of the golf course or the statutory authorities as required by section 306.141.1(3). Point six is denied.

In his seventh and final point on appeal, Appellant maintains his conviction was in error due to the State's failure "to prove that property of another was damaged in that the State did not present evidence or testimony from the owner(s) of the golf course as to who owned the golf course or whether or not there was, in fact, damage to the golf course."

This point is summarily denied. Appellant cites to no authority in support of his point. "We are not required to review points or arguments when they appear without citation of applicable authority." *State v. Conaway*, 912 S.W.2d 92, 95 (Mo.App.1995). When no authority is cited and no explanation is otherwise given for its absence, a point relied on is deemed waived or abandoned. *Id.* Appellant's seventh point is denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and SHRUM, J., concur.