STATE of Missouri, Respondent,

v.

**Michelle HOUCKS, Appellant.**

**No. WD 52467.**

Missouri Court of Appeals,
Western District.

Oct. 28, 1997.

Rosemary E. Percival, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jacqueline K. Hamra, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, C.J.,P.J., and BERREY, Senior Judge, and HANNA, J.

ULRICH, Chief Judge, Presiding Judge.

Michelle Houcks appeals her convictions following jury trial for assault in the first degree, § 565.050, RSMo 1994, and armed criminal action, § 571.015, RSMo 1994. Mrs. Houcks raises only one point on appeal. She contends that the trial court erred in refusing to submit to the jury an instruction on self-defense. The judgment of convictions is affirmed.

## FACTS

Michelle Houcks lived with her husband Darren in their home located at 5411 Sycamore Street in Jackson County, Missouri, until the two decided to separate in the summer of 1995. On Thursday, August 24, 1995, the couple agreed that Michelle would move from the house and that she and her family would return the following Saturday to re-move her belongings. Mrs. Houcks drove to the 5411 Sycamore address unannounced on Monday, August 28, arriving at 9:30 p.m. Mrs. Houcks exited her car, walked up the driveway, and began talking with Mr. Houcks, who was working on his car in the garage. Mr. Houcks informed his wife that they had nothing to talk about and continued to work on his car. Mrs. Houcks then noticed someone moving in the house and asked her husband who was inside. Mr. Houcks replied that it was a woman friend of his and her two children. Mrs. Houcks entered the house and returned a few minutes later cursing. She struck Mr. Houcks and demanded to know the identity of the woman in the house. After arguing for several minutes with her husband, Mrs. Houcks reentered the house. Mr. Houcks followed a few minutes later, meeting Mrs. Houcks in the living room, where she clutched a pair of scissors in one hand and a screwdriver in the other. Mr. Houcks grabbed Mrs. Houcks's hand, knocking the screwdriver and scissors from her grasp. Mr. Houcks then pulled her through the garage and forced her to leave, telling her that he was going to call the police.

The following day, Tuesday, August 29, 1995, Mr. Houcks returned home from work just after 5:00 p.m. and went to the kitchen to check his caller ID. Sensing that somebody was in the house, Mr. Houcks turned and saw Mrs. Houcks standing in the kitchen between the sink and the refrigerator. He turned back to look at the caller ID box. When he turned around to look at Mrs. Houcks again, he saw that she was holding a cup of gasoline, which she then threw over him. The gasoline struck him in the area of his upper chest and left side. Mr. Houcks then rushed at Mrs. Houcks and grabbed both of her wrists. He saw that she was holding a lighter, which sparked igniting them both. Mrs. Houcks jerked away from Mr. Houcks and ran into the dining room where she rolled on the floor until the fire on her clothing was extinguished. Mr. Houcks's clothes were burning, and he ran through the kitchen, struck a glass table cutting his leg, and fell onto a couch. As Mr. Houcks was burning, he asked her, "Why are you doing

this to me?" Mrs. Houcks responded that if she couldn't have him, nobody could.

After extinguishing the flames, Mr. Houcks saw Mrs. Houcks and told her, "Now it's my turn." Mrs. Houcks turned and ran through the house. Mr. Houcks ran outside where he saw neighbors.

Mr. Houcks ran to a neighbor's yard with skin hanging from his body. He asked the neighbors to call the police and an ambulance. He said that his wife had just thrown gasoline on him.

A fire truck arrived, and when they opened the garage door to enter the home, a black cloud of smoke emerged indicating that the house was on fire. An ambulance took Mr. Houcks to Research Medical Center in Kansas City where he remained until around midnight. He was then life-flighted to the University of Missouri Medical Center burn facility in Columbia, Missouri, where he stayed for two months.

Following the incident, Mr. Houcks was in a coma for two weeks. Fifty percent of his body was burned. He suffered burns to his back, stomach, and both his arms. As a result of the burning, Mr. Houcks has scars over much of his body. He wears a "garment suit" to slow the healing process to deter scaring.

The jury found Mrs. Houcks guilty of the offenses charged. The jury recommended ten years incarceration for the assault in the first degree and three years for the armed criminal action. She was sentenced on March 8, 1996, as the jury recommended. The court ordered the sentences to run concurrently to each other. This appeal followed.

### SELF–DEFENSE INSTRUCTION

As her only point on appeal, Mrs. Houcks claims that the trial court erred in refusing to submit the self-defense instruction to the jury. She argues that the evidence supported both an accident instruction, which was given, and the self-defense instruction.

■ Self-defense is an affirmative defense. § 563.026.3, RSMo 1994. *State v. Singleton,* 77 S.W.2d 80, 83 (Mo.1934). A trial court is obligated to instruct on self-defense if the evidence, when viewed in a light most favorable to the defendant, supports giving the instruction. *State v. Weems,* 840 S.W.2d 222, 226 (Mo. banc 1992) (citing *State v. Chambers,* 671 S.W.2d 781, 783 (Mo. banc 1984)); *State v. Peek,* 806 S.W.2d 504, 505 (Mo.App. 1991) (reversing for failure to submit self-defense instruction). A trial court is required to instruct the jury on self-defense if any substantial evidence putting self-defense in issue is presented. *Peek,* 806 S.W.2d at 505. Failure to submit such an instruction when appropriate constitutes reversible error. *Weems,* 840 S.W.2d at 226.

■ Asserting self-defense and accident as defenses is inconsistent. *State v. Hafeli,* 715 S.W.2d 524, 529 (Mo.App.1986). *But See State v. Branch,* 757 S.W.2d 595, 599 (Mo. App.1988)(self-defenses and accident are no longer mutually exclusive under MAI–CR3d 304.11D). When claiming self-defense, one acknowledges intentionally inflicting injury or death on another person while asserting such conduct was necessary because of apprehension of great bodily harm or death. *See State v. Miller,* 772 S.W.2d 782, 784 (Mo.App.1989); *State v. Malone,* 301 S.W.2d 750, 759 (Mo. banc 1957). On the other hand, asserting that injury to another resulted from accident includes the assertion that the causal connection was unintentional. *See Miller,* 772 S.W.2d at 782.

■ Missouri courts do not recognize the anomalous doctrine of accidental self-defense.[1] *State v. Whitchurch,* 339 Mo. 116, 96 S.W.2d 30, 35 (Mo.1936). "Such an attempt to avoid the logic of the law by contending there was an 'accidental shooting of self-defense' has been rejected" by the supreme court in that such a defense "would require a combination of two diametrically opposite theories." *State v. Peal,* 463 S.W.2d 840, 842 (Mo.1971).

---

1. "Accidental self-defense" has been defined as an accident in the course of self defense. *State v. Cook,* 696 S.W.2d 814 (Mo.App.1985). To the extent that *State v. Cook* suggests that this scenar-

io is plausible and necessitates the submission of instructions on both self-defense and accident, it is overruled.

■ Despite the inconsistency of the two defenses, a defendant may be entitled to have both submitted to the jury if they are proved by proper evidence. *State v. Morris,* 248 S.W.2d 847 (Mo. banc 1952); *State v. Wright,* 352 Mo. 66, 175 S.W.2d 866 (Mo. banc 1943). The evidence necessary to justify instructions on the inconsistent defenses, however, must be offered by the state or proved by third party witnesses for the defendant. *Wright,* 175 S.W.2d at 866. The defendant alone cannot provide the basis for inconsistent defenses. *Peal,* 463 S.W.2d at 842.

■ The trial court did not err in denying Mrs. Houcks's requested self-defense instruction. As with other affirmative defenses, a person claiming self-defense seeks to justify the act for which the person is charged rather than simply denying the allegation and, thereby, compelling the state to prove the charged offense. Self-defense is an admission by the person invoking the defense that the person committed the alleged act. The accused justifies the act by claiming fear of imminent injury or death and the absence of reasonably alternative conduct.

■ Throughout the course of the trial, Mrs. Houcks never admitted to intentionally setting fire to her husband. She consistently asserted that the fire was accidental, unintentionally resulting from a domestic argument that became physical. While Mrs. Houcks claims to have pushed her husband away to "create distance," she never acknowledged that she intended to set her husband on fire. Self-defense, as a legal defense, cannot occur where the accused denies committing the underlying act for which the person is charged. Mrs. Houcks's unambiguous testimony, thus, prevents her from claiming that the action was unintentional in the course of self-defense.

■ The only exception to the rule precluding the submission of the inconsistent defense is that the evidence of the inconsistent defense was offered by either the state or proved by third party witnesses called by the defense. *Peal,* 463 S.W.2d at 842. No third party evidence was presented in support of self-defense. Mrs. Houcks identifies the testimony of Officer Atwood as neutral support for her claim of self-defense. Citing *State v. Randolph,* 496 S.W.2d 257, 262 (Mo. banc 1973), Mrs. Houcks argues that an inconsistent defense is allowed where evidence injected by the state establishes elements of an inconsistent defense. In *Randolph,* the supreme court held that where the state adduced a defendant's confession supporting elements of both accident and self-defense, instructions on the inconsistent defenses is justified. *Id.* However, Mrs. Houcks's statement to Officer Atwood on the night of the incident did not support giving the self-defense instruction. The police report offered by the state reinforced Mrs. Houcks's testimony that the fire was accidental. Furthermore, neither the state, nor any of the witnesses for the defense offered evidence that Mrs. Houcks was acting in self-defense. Mrs. Houcks's own testimony remains as the only evidence buttressing her theory of self-defense. This is legally insufficient to support an inconsistent instruction for self-defense. The trial court did not err in refusing to submit to the jury an instruction on self-defense.

The judgment of convictions is affirmed.

HANNA, J., and BERREY, Senior Judge, by appointment, concur.