STATE of Missouri, Respondent,

v.

Michael L. MILLER, Appellant.

No. WD 60267.

Missouri Court of Appeals, Western District.

Oct. 29, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Dec. 24, 2002.

---

Kent Denzel, Assistant State Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Philip M. Koppe, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, RONALD R. HOLLIGER, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Chief Judge.

Michael Miller was charged with first-degree assault, § 565.050,[1] as a result of an altercation between Miller and Dennis Newlin on December 22, 2000. As a consequence of the fight, Dennis Newlin sustained a severe head injury and a skull fracture, among other things and, at the time of trial, still could not walk or stand on his own and was essentially incoherent, with a prognosis that his mental condition was unlikely to improve. Miller was convicted by a jury of the offense as charged, and on July 18, 2001, he was sentenced as a prior offender to twenty years imprisonment. This appeal follows.

Miller brings two points on appeal, the second of which is dispositive. In that point, Miller asserts the trial court erred in refusing to instruct the jury on self-defense. An appellate court, when confronted with the argument that the trial court erred in refusing to instruct on self-defense, must view the evidence and all reasonable inferences in the light most favorable to the defendant. *State v. Francis*, 60 S.W.3d 662, 673 (Mo.App. W.D. 2001). Thus, for purposes of addressing the issue presented, we state the facts in the light most favorable to the defendant, with references to contrary or inconsistent evidence as needed for context.

On December 22, 2000, Miller hosted a Christmas party at his home in Elston Acres trailer court in Cole County, Missouri. At least seven adults attended the party during the course of the evening. Miller and his guests were consuming alcoholic beverages throughout the evening. One of the guests at the party was Dennis Newlin. Shortly after Dennis arrived at the party, he started making racial slurs and stated that he had been in a fight previously and that he wanted the men to

accompany him to go beat up "the black people that had jumped on him." The guests at the party refused. Dennis also began talking about the "Aryan Brotherhood" and "Aryan Nation." In addition, Dennis touched and groped women at the party. Because of his behavior, Miller eventually asked Dennis to leave the party, and he did.

About two hours later, Dennis returned to the party with his sister, Sharon Newlin. Miller told them they could stay as long as Dennis behaved himself. Subsequently, in addition to once again beginning to talk about the Aryan Nation, Dennis grabbed a female guest "on the rump," at which point Miller told him he had to leave. In response, Dennis was argumentative, asking why he was being told to leave and Sharon wasn't. Miller responded that she wasn't causing a problem and she was welcome to stay. As the discussion continued, Dennis eventually asked Miller "to come outside and explain to him why he couldn't stay." Miller agreed, and they both left the mobile home.

Once outside, they continued to talk calmly for a while, but the conversation escalated into a loud argument. After the words became more heated, Dennis hit Miller in the jaw, and Miller then struck Dennis with his left fist and then his right. Dennis fell to the ground and may have struck his head either on the mobile home or a nearby minivan when he was falling.

 "'A trial court is obligated to instruct on self-defense if the evidence, when viewed in a light most favorable to the defendant, supports giving the instruction.'" *Vogel v. State*, 31 S.W.3d 130, 141 (Mo.App. W.D.2000) (quoting *State v. Houcks*, 954 S.W.2d 636, 638 (Mo.App. 1997)). The obligation exists even where the defendant has not requested an in-

---

**1.** All statutory references are to RSMo 2000 unless otherwise noted.

struction on self-defense. *State v. Blackman*, 875 S.W.2d 122, 132 (Mo.App. E.D. 1994). "The quantum of proof for self-defense has been variously defined as 'substantial evidence,' 'evidence putting it in issue,' 'any theory of innocence ... however improbable that theory may seem, so long as the most favorable construction of the evidence supports it,' 'supported by evidence,' 'any theory of the case which his evidence tended to establish,' 'established defense,' and 'evidence to support the theory.'" *State v. Morrow*, 41 S.W.3d 56, 59 n. 1 (Mo.App. W.D.2001) (quoting *State v. Weems*, 840 S.W.2d 222, 226 (Mo. banc 1992)). "Such evidence may come from defendant's testimony alone." *State v. Peek*, 806 S.W.2d 504, 505 (Mo.App. E.D. 1991). "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002).

■ The use of physical force is permitted to protect oneself from imminent attack. Section 563.031 provides that "[a] person may ... use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person...." The use of deadly force to protect oneself, however, is limited to those circumstances where a person "reasonably believes that such deadly force is necessary to protect himself or another against death, serious physical injury, rape, sodomy or kidnapping or serious physical injury through robbery, burglary or arson." § 563.031.2. Deadly force is defined as "physical force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious physical injury." § 563.011(1). Serious physical injury is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 556.061(28).

The State claims that Miller was not entitled to an instruction on self-defense. It contends that Miller used deadly force against Dennis Newlin and that he was not entitled to use deadly force to protect himself from a simple assault and battery. In making this argument, the State relies on evidence presented at trial that would support a finding that Miller used deadly force.

■ The State's argument is without merit because it is dependent upon viewing the evidence in the light most favorable to the State. It ignores the fact that the decision whether to instruct on self-defense must be made by viewing the evidence in the light most favorable to the defendant, and our review of the refusal to instruct on self-defense is done in the same manner. *Vogel*, 31 S.W.3d at 141; *Francis*, 60 S.W.3d at 673. While the State presented strong evidence that Dennis was struck more than twice, that it was likely that he had been kicked several times, that Miller made inconsistent statements regarding the fight, and that Dennis suffered serious brain damage as a result of the injuries sustained in the altercation, it is the evidence viewed in the light most favorable to Miller, as heretofore set forth, upon which we must rely in determining whether the trial court should have instructed on self-defense.

Miller testified that Dennis hit him in the jaw, and he then struck Dennis with a left and then a right. He stated that Dennis may have hit his head on the mobile home or a nearby minivan as he was falling to the ground. Dr. Patrick Gibson, who examined Dennis at the hospital and was called as a State's witness, testified

that, while Dennis' injuries were more likely caused by kicks rather than punches to the head, he could not determine the cause of his injuries, nor could he rule out the possibility that Dennis could have suffered such injuries after being punched in the head and banging his head against objects such as the trailer, the parked minivan, and the ground. Thus, the State's only medical witness could not rule out the possibility that Dennis' injuries. were caused in the manner described by Miller.

The Missouri Supreme Court most recently addressed the issue of self-defense in *State v. Westfall*, 75 S.W.3d 278 (Mo. banc 2002). In that case, the defendant was involved in an altercation with a Robert Jenkins. *Id.* at 280. The defendant testified that, during the fight, Jenkins ended up kneeling over him and was hitting him with what felt like a hard object. *Id.* At that point, according to defendant, he pulled a carpet knife out of his overalls and blindly struck out with it several times cutting Jenkins around the head and neck in an attempt to get Jenkins off of him. *Id.* As a result, the defendant was charged with first-degree assault and armed criminal action. *Id.* The trial court refused to submit defendant's tendered self-defense instruction on the assault charge, which hypothesized the issue whether the defendant used deadly force, and allowed the jury to find self-defense based on the use of deadly or non-deadly force. *Id.* at 281. Rather, the trial court used the self-defense instruction formatted on the basis that the evidence was clear that deadly force was used. *Id.* The defendant was convicted of both charges and appealed, arguing that the trial court erred in refusing to submit his proffered instruction on the issue of self-defense. *Id.*

On appeal, our Supreme Court rejected the notion "that the use of a knife constitutes the use of deadly force as a matter of law." *Id.* at 283. The Court found that the heart of the matter was a "factual question" as to whether the defendant's "use of the carpet knife during the physical altercation . . . was 'deadly force,' or if [defendant's] actions . . . could constitute non-deadly force, or 'physical force,' for purposes of the alternative self-defense instruction[.]" *Id.* at 281–82. The Court also noted that " '[t]he question of whether deadly force was used depends not only on the amount of force used but also on the defendant's purpose to cause, or awareness of the likelihood of causing, death or serious physical injury.' " *Id.* at 282 (quoting MAI CR3d 306.06, Notes on Use 4(b)). Ultimately, the Court held that the trial court erred by implicitly finding that the defendant's conduct constituted the use of deadly force as a matter of law and in implicitly determining as a matter of law that the defendant had the purpose to cause, or the awareness of the likelihood of causing, death or serious physical injury. *Id.* at 283–84. Consequently, the Court reversed the convictions and remanded the case for a new trial. *Id.* at 284.

■ Based on our review of *Westfall*, it cannot be said that Miller's conduct in this case, emphasizing again that we are viewing the evidence in the light most favorable to Miller, constitutes deadly force as a matter of law.[2] In the case at bar, the evidence permits a finding that Miller struck Dennis twice, but only after Dennis had hit him in the jaw. He used no weap-

---

**2.** In light of *Westfall*, the State's reliance on *State v. Parkhurst*, 845 S.W.2d 31 (Mo. banc 1992), is clearly misplaced. *Parkhurst* stands for the proposition that exhibiting a firearm in an angry and threatening manner constitutes deadly force as a matter of law. *Id.* at 36. Use of a knife or one's fists obviously is not as dangerous as brandishing a loaded gun.

on. The jury could have found that the seriousness of Dennis' injuries resulted from his hitting his head while falling and that such injuries were not reasonably anticipated. Accordingly, the jury could have concluded that Miller had no "purpose to cause, or awareness of the likelihood of causing, death or serious physical injury." *Westfall,* 75 S.W.3d at 284 (quoting MAI CR3d 306.06, Notes on Use 4(b)). Therefore, the relevant inquiry is whether Miller was entitled to an instruction on self-defense based on the use of non-deadly force.

■■■ "Self defense requires ... a real, specific, actual and immediate threat of bodily violence to which the defendant's actions are an appropriate and proportional response." *State v. Harris,* 870 S.W.2d 798, 809–10 (Mo. banc 1994). "[S]elf-defense may be justification for the use of physical force when and to the extent a person reasonably believes such force is necessary to defend himself from what that person reasonably believes to be the use or imminent use of unlawful force by the other person." *State v. Watson,* 839 S.W.2d 611, 614 (Mo.App. E.D.1992). Miller must establish the following elements to show an entitlement to self defense: "(1) [he] did not provoke the attack nor was he the aggressor, (2)[he] reasonably believed that he was faced with the necessity of defending himself from bodily harm, (3)[he] used no more force than was necessary, and (4)[he] attempted to avoid the confrontation." *State v. Delgado,* 774 S.W.2d 549, 552 (Mo.App. S.D.1989).

We have already determined that there was conflicting evidence concerning the third element, that Miller used only the force reasonably necessary to defend himself. As such, the issue would be within the sound discretion of the jury.

■■■ There was also evidence to support the first element, that Miller was not the aggressor. Miller, along with several witnesses, testified that Dennis was causing problems at his house by groping women, making racist comments, talking about a fight he had been involved in previously, and trying to recruit people to go retaliate against the people who had "jumped him." When asked to leave, Dennis protested and asked Miller to talk to him outside. Miller testified that he agreed to go outside and that the two began a "mellow" discussion that escalated into a heated argument. Dennis then hit Miller in the jaw, and Miller responded by hitting him twice. If the jury believed Miller's testimony, along with that of most witnesses, it could determine that there was a lack of aggression by Miller.

Miller also presented evidence showing reasonable grounds for him to believe that he was at immediate risk for bodily harm, the second element. According to his testimony, Dennis hit him in the jaw. Miller was not required to wait for Dennis to strike him a second time before defending himself. "[A]n individual who is where he has right to be and reasonably believes he is in imminent danger of assault by another has the right of attack when it reasonably appears necessary for protection against the impending assault." *In Interest of J. M.,* 812 S.W.2d 925, 933 (Mo.App. S.D.1991). "[T]he law of self defense implies the right of attack when it reasonably appears necessary for protection against an impending assault, but it depends on necessity, real or apparent, and the danger must be imminent or reasonably appear to be so." *Id.* (quoting *State v. Hicks,* 438 S.W.2d 215, 218 (Mo.1969)). "[A] person about to be attacked may properly use force to prevent the attack, and is not bound to wait until his adversary strikes a blow." *Id.* (citing *State v. Daugherty,* 196 S.W.2d 627, 628 (Mo.1946)). There was ample evidence showing that Dennis refused a verbal order to leave Miller's prop-

erty, that he had been in a fight and indicated a desire to retaliate, and that he had been behaving belligerently all evening. Dennis struck Miller once. If this evidence is believed, Miller was not required to wait for Dennis to strike a second time before defending himself. Under these circumstances, the jury could have determined that Miller reasonably believed he was in danger of an immediate battery.

Finally, there is conflicting evidence concerning the fourth element, whether Miller did all that was possible to avoid the danger. While Miller may have understood Dennis' request to go outside as an invitation to fight, it is also possible that he believed that if he went outside he could eventually convince Dennis to leave his property and avoid the possibility of a fight inside his home. There was evidence that Dennis had returned to the party after he was asked to leave once. In addition, Miller and other witnesses testified that Dennis protested when asked to leave a second time. While Miller might have chosen a different course of conduct than following Dennis outside, "'the reasonableness of such other conduct would be within the sound discretion of the jury.'" *State v. Albanese*, 920 S.W.2d 917, 924 (Mo.App. W.D.1996) (quoting *State v. Chambers*, 671 S.W.2d 781, 783–84 (Mo. banc 1984)).

▮ Where there is conflicting evidence concerning the issue of self-defense, the instruction must be given. *State v. Allison*, 845 S.W.2d 642, 646 (Mo.App. W.D.1992); *See also State v. Weems*, 840 S.W.2d 222, 227 (Mo. banc 1992). In *Weems*, the Court observed that "[h]owever improbable, there is evidence to support the self-defense theory put forward by the defense." *Weems*, 840 S.W.2d at 227. "[I]t is within the sound discretion of the

jury whether [the defendant] did all that was within his power to avoid danger." *Id.* at 227.

In the case at bar, when the record is viewed in the light most favorable to Miller, there is evidence, however improbable, from which a jury could conclude that Miller punched Dennis twice and that such force was reasonable under the circumstances. The jury likewise could have concluded that Miller struck Newlin because he reasonably believed he was in danger of an imminent battery. In addition, there is conflicting evidence concerning whether Miller did all that was possible to avoid the danger. These issues cannot be resolved as matters of law and should have been left to the sound discretion of the jury. *Id.*; *Albanese*, 920 S.W.2d at 924.

The trial court erred in refusing to instruct on self-defense. Point granted.[3] The judgment of conviction is reversed, and the cause is remanded for a new trial.

All concur.

---

**3.** Because we reverse on Miller's second point, we need not address Point I, where he asserts the trial court erred in refusing to instruct the jury on the lesser included offense of second degree assault.