Robert STIERS, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 65559.

Missouri Court of Appeals,
Western District.

June 19, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 31, 2007.

Craig A. Johnston, Assistant State Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, for Respondent.

Before VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Judge.

Robert Stiers ("Appellant") appeals from the denial of his Rule 29.15 motion for post-conviction relief following an evidentiary hearing. In relevant part, Appellant alleged that trial counsel was ineffective for failing to request a jury instruction on defense of person or defense of property and failing to request an instruction on the lesser-included offense of false imprisonment. For the following reasons, we reverse the decision of the motion court.

On June 11, 2000, Kimberly Shaon sought treatment in the emergency room of a hospital in Hermann, Missouri, for bruising around both eyes, bruising and swelling of the chin, swelling of the forehead, swelling and bruising on the left side of her head, a tender neck, and an abrasion between her breasts. Shaon told Dr. Mike Mahoney that she had been beaten by her boyfriend, who was waiting for her in the parking lot. Dr. Mahoney contacted the sheriff's department and relayed Shaon's allegations to Deputy Shannon Jefferies.

Deputy Jefferies spoke with Shaon, who told him that Appellant had beaten her over finances, their recent breakup, and Appellant's pending prison commitment. Shaon told Deputy Jefferies that Appellant had started yelling at her when she arrived at his home the previous evening, that he had started hitting her on the head, and that he had threatened to kill her. She also told the deputy that Appellant had tried to choke her with an extension cord and that he later had used the extension cord to tie her hands behind her back. After a deputy arrived at the hospital, Dr. Mahoney went with him to the parking lot and informed Appellant that Shaon would not be going home with him.

On June 12, 2000, Shaon went to the Callaway County Sheriff's Department and asked to speak to someone. Shaon was

interviewed by Sergeant Bob Smith, and she told him that she had gone to Appellant's house and had entered when nobody came to the door. She told Sgt. Smith that Appellant soon came out of the bedroom and began yelling at her about money that she owed him. Shaon then described how Appellant had beaten her, choked her, and tied her up, and claimed that he twice forcibly sodomized her. After her interview with Sgt. Smith, Shaon was taken to Callaway Community Hospital where she was examined and samples were taken using a sexual assault kit. Testing on those samples was inconclusive.

Sgt. Smith subsequently obtained an arrest warrant for Appellant and a warrant to search Appellant's house. Appellant was eventually charged by information with two counts of forcible sodomy, two counts of armed criminal action, and one count of felonious restraint.

Appellant testified on his own behalf at trial. Appellant stated that he was awakened in the middle of the night by a loud noise upstairs. He claimed that when he went upstairs, he saw Shaon at the kitchen table going through his wallet and a briefcase, wherein he kept his important documents and checkbooks. Appellant said he saw her place something in her pocket. Appellant testified that Shaon had stolen things from him in the past and pawned them. Appellant asserted that when he asked Shaon what she was doing there, Shaon gave no response, and when he asked her what she had placed in her pocket, she denied placing anything in her pocket. Appellant said that when Shaon refused to empty her pockets, he tried to reach into them, and she slapped him. Appellant claimed he then slapped Shaon back, and they began to push and shove each other.

According to Appellant, Shaon picked up a knife off the kitchen table and told him to let her go. Appellant said he told Shaon that he would not let her leave until she emptied her pockets. Appellant claimed that when he tried to disarm her, Shaon kicked him in the groin. He said they then "went at it" and that he repeatedly struck Shaon and attempted to disarm her for about five or six minutes. Appellant stated that eventually he knocked Shaon into a ladder and she fell to the ground. He said he pinned her down and disarmed her. Appellant testified that he kicked the knife under the kitchen counter. Appellant stated that Shaon tried to kick him in the groin as he was trying to get off of her, so he decided to hold her down for a while longer. He stated that they then had a five-minute conversation with him holding her down. He said that he then helped her up, they sat down on the couch, and they continued to talk for about thirty to forty minutes. Appellant said that he then went to sleep on the couch while Shaon slept in the bed. Appellant denied ever tying Shaon up with an extension cord or ever trying to strangle her. Appellant stated that he hit Shaon with his hands and fist but that he did not threaten her with the knife or any other weapon.

Shaon's testimony contrasted greatly with that of Appellant. She testified that she went to the Appellant's house after receiving a phone call from him. She stated that she saw a butcher knife, a hammer, and an extension cord on the kitchen table. Shaon said she asked him what the knife was for and that he stated, "It's for you, bitch." Shaon testified that Appellant then slapped her and that they began to fight. She said that she ran around the house trying to escape until a ladder fell on top of her. Shaon stated that Appellant pushed the ladder down on her and told her that he was going to kill her. Shaon said that, while he held her down, Appel-

lant was holding the butcher knife in one hand and hitting her in the face with the other. She also claimed that at one point he tried unsuccessfully to wrap an extension cord around her throat. Shaon testified that Appellant then choked her with both hands. She stated that she continued to struggle for a while but eventually gave up. Shaon said that Appellant then tied her hands behind her back, hit her, kicked her, and threatened to kill her. She claimed that Appellant sodomized her twice that evening. Shaon testified that he had her lay back down on the ground and that he would walk by and kick her and spit on her. She further said that he held the knife to her chest and cut her at one point.

Following trial, the jury returned verdicts acquitting Appellant on the two counts of forcible sodomy and two counts of armed criminal action, but it found Appellant guilty of one count of felonious restraint. The trial court subsequently sentenced Appellant to a term of seven years in the Missouri Department of Corrections. Appellant's conviction was affirmed by this Court on direct appeal. *State v. Stiers,* 119 S.W.3d 139 (Mo.App. W.D.2003).

Appellant subsequently filed a timely *pro se* motion for post-conviction relief under Rule 29.15. An amended motion was later filed by appointed counsel. In relevant part, Appellant's post-conviction motion alleged that trial counsel was ineffective for failing to request a jury instruction on defense of person or defense of property and for failing to request an instruction on the lesser-included offense of false imprisonment. Following an evidentiary hearing, the motion court denied Appellant's motion. Appellant brings three points on appeal from that decision.

■ Our review of the motion court's denial of a Rule 29.15 motion is limited to determining whether the findings and conclusion of the motion court are clearly erroneous. *Rule 29.15(k).* "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000).

Appellant contends on appeal that the trial court erred in finding that he received effective assistance of counsel for three different reasons. "To prevail on an ineffective assistance of counsel claim, [Appellant] must show that (1) trial counsel's performance was deficient in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and (2) the deficient performance prejudiced [Appellant]." *State v. Rich,* 950 S.W.2d 337, 339 (Mo.App. W.D.1997) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). "We presume counsel to be competent, requiring proof to the contrary by a preponderance of the evidence." *State v. Taylor,* 929 S.W.2d 209, 224 (Mo. banc 1996). As to prejudice, a claimant must demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Slater v. State,* 147 S.W.3d 97, 100 (Mo. App. W.D.2004). Appellant must establish both the performance and prejudice prongs of this test in order to prevail on a claim of ineffective assistance, and if he fails to satisfy either prong, we need not consider the other. *State v. Simmons,* 955 S.W.2d 729, 746 (Mo. banc 1997).

Appellant's first two points assert that trial counsel was ineffective for failing to submit instructions on defense of self and defense of property to the jury. Testifying at the motion hearing, Appellant's counsel stated that he had not submitted

either instruction because he did not believe they were applicable because the State's evidence indicated that Appellant had restrained Shaon for several hours. The motion court found counsel's testimony credible, specifically finding that "[t]rial counsel did not think the self-defense instruction [was] warranted in Mr. Stiers' case, because he thought the law required the person asserting physical restraint in self-defense would need to call law enforcement and felonious restraint involved a longer time than just the time it took to disarm Ms. Shaon in Mr. Stiers' account." With regard to counsel's failure to submit an instruction on defense of property, the motion court found that "[t]rial counsel did not think the defense of property instruction applied to the facts and circumstances of Mr. Stiers' case." Thus, counsel believed, as a matter of law, that these defenses were not available to Appellant, and this is not a case where counsel chose not to submit the instructions as a matter of trial strategy. We first consider whether counsel correctly assessed whether these defenses were available to Appellant.

■ Pursuant to § 563.041.1,[1] an individual may "use physical force upon another person when and to the extent that he reasonably believes it necessary to prevent what he reasonably believes to be the commission or attempted commission by such person of stealing, property damage or tampering in any degree." Section 563.041.3 permits the "use of physical restraint as protective force provided that the actor takes all reasonable measures to terminate the restraint as soon as it is reasonable to do so." The use of force in defense of property, however, is limited to non-deadly force unless deadly force is otherwise authorized by statute. § 563.041.2. Deadly force is " 'physical force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious physical injury.' " *State v. Miller*, 91 S.W.3d 630, 633 (Mo.App. W.D. 2002) (quoting § 563.011(1) ).

■ " 'A person commits the crime of felonious restraint if he knowingly restrains another unlawfully and without consent so as to interfere substantially with [their] liberty and exposes [them] to a substantial risk of serious physical injury.' "[2] *State v. Christian*, 184 S.W.3d 597, 602 (Mo.App. E.D.2006) (quoting § 565.120.1 ). Thus, one of the elements of felonious restraint is the use of deadly force—the intentional use of physical force that creates a substantial risk of serious physical injury. Since deadly force cannot be utilized in defense of property, defense of property does not provide a viable defense to a charge of felonious restraint. Accordingly, counsel was correct in determining that this defense was not available to Appellant.

■ Deadly force is allowable, however, in self-defense under certain circumstances. " 'Self-defense may be justification for the use of physical force when and to the extent a person reasonably believes such force is necessary to defend himself [or herself] from what that person reasonably believes to be the use or imminent use of unlawful force by the other person.' " *Miller*, 91 S.W.3d at 635 (quoting *State v. Watson*, 839 S.W.2d 611, 614 (Mo. App. E.D.1992)); *see also* § 563.031. This

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

2. "Serious physical injury" is a " 'physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.' " *State v. Christian*, 184 S.W.3d 597, 602 (Mo.App. E.D.2006) (quoting § 565.002(6) ).

"extends to the use of physical restraint as protective force provided that the actor takes all reasonable measures to terminate the restraint as soon as it is reasonable to do so." *§ 563.031.3.* To warrant the use of deadly force in self-defense, four elements must be present:

(1) an absence of provocation or aggression on the part of the defender; (2) a reasonable belief that deadly force is necessary to protect himself or herself against an immediate danger of death, serious physical injury, rape, sodomy, or kidnapping or serious physical injury through robbery, burglary or arson; (3) a reasonable cause for that belief; and (4) an attempt by the defender to do all within his or her power consistent with his or her own personal safety to avoid the danger and the need to take a life.

*State v. Hayes,* 88 S.W.3d 47, 57 (Mo.App. W.D.2002).

"A self-defense instruction must be submitted when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony." *State v. Avery,* 120 S.W.3d 196, 200 (Mo. banc 2003) (internal quotation omitted). "In determining whether the evidence supports the giving of a self-defense instruction, the evidence has to be viewed in a light most favorable to the defendant." *State v. Beck,* 167 S.W.3d 767, 779 (Mo.App. W.D.2005). The evidence of self-defense may come from the defendant's evidence or it may come from the evidence presented by the State or through the testimony of a third-party. *Avery,* 120 S.W.3d at 201. If the evidence supports differing conclusions as to whether the defendant acted in self-defense, he or she is entitled to an instruction on it. *Miller,* 91 S.W.3d at 633.

Viewed in the light most favorable to Appellant, the evidence reflects that Appellant awoke to find Shaon going through his documents and checkbooks and saw her place something in her pocket. Shaon refused to explain her presence in his house or to empty her pockets, and, when Appellant tried to reach into her pockets, Shaon slapped him. Appellant then slapped Shaon back, and they began to push and shove each other. Shaon picked up a knife off the kitchen table and told Appellant to let her go. Appellant told Shaon that he would not let her leave until she emptied her pockets. When Appellant tried to disarm her, Shaon kicked him in the groin. They then "went at it," and Appellant repeatedly struck Shaon and attempted to disarm her for about five or six minutes. Eventually Appellant knocked Shaon into a ladder, and she fell to the ground. Appellant pinned Shaon down and disarmed her. When Shaon tried to again kick him in the groin as he was trying to get off of her, Appellant decided to hold her down for a while longer. Appellant and Shaon then had a five-minute conversation with him holding her down. Appellant then helped her up, they sat down on the couch, and they continued to talk for about thirty to forty minutes.

The foregoing evidence clearly supported the submission of a self-defense instruction. If he reasonably believed that Shaon was attempting to take his property, Appellant was justified in utilizing nondeadly force to keep her from leaving his house with the property and was not the initial aggressor in the ensuing altercation. Once Shaon began brandishing the knife, it can be inferred that Appellant reasonably believed deadly force was necessary to protect himself from serious physical injury and that deadly force became justified at that point. Under the evidence, Appellant had two avenues of defense available to him: (1) convince the jury that he did not use deadly force, or (2) convince the jury that he used deadly force in self-

defense. These defenses were not inconsistent with each other. A reasonably competent attorney would have recognized that a self-defense instruction was supported by the evidence and requested such an instruction. The trial court would have been obligated to give that instruction to the jury.

The dissent contends that the jury was restricted to accepting either Appellant or Shaon's story in this case. The dissent argues that a self-defense instruction was not required and its absence could not have altered the result because (1) based on the verdict, the jury did not believe Appellant's testimony as to the amount of force he used and (2) Shaon's account of the events did not support a self-defense instruction. (Dissenting op. at 267). It claims that to accept Appellant's testimony about the events but to disbelieve his testimony related to the amount of force he used would constitute "sew[ing] together conflicting evidentiary parts to construct a Frankenstein-fact-pattern unsupported by the evidence." (Dissenting op. at 268). According to the dissent, if the jury found that deadly force was used, it was required to believe that it occurred under the circumstances set forth by Shaon, and it could not have believed Appellant's testimony regarding how the confrontation unfolded. (Dissenting op. at 268). In making this argument, the dissent wholly disregards our standard of review, as well as the jury's clear-cut rejection of much of Shaon's testimony—as reflected by its acquittal of Appellant on the forcible sodomy and armed criminal action charges against him.

The first problem with the dissent's position is that Appellant's testimony that he attempted to overpower and restrain Shaon while she was wielding a knife could have given rise to a finding by the jury that he intentionally used force that created a strong probability of death or great bodily harm. The Illinois Court of Appeals was faced with a strikingly similar situation in *State v. Jaffe,* 145 Ill.App.3d 840, 97 Ill.Dec. 793, 493 N.E.2d 600 (Ill. App.1986). As in the case at bar, the defendant in *Jaffe* testified that he used force after being confronted by a crazed individual wielding a weapon. *Id.* at 610. The court in *Jaffe* noted that "[t]he jury was instructed that it could find defendant guilty of attempted murder if it found that when defendant performed the acts constituting a substantial step toward the commission of the offense of murder he (1) intended to kill; (2) intended to do great bodily harm, or (3) knew that such acts created a strong probability of death or great bodily harm." *Id.* at 611. The court then held:

> Even if the jury believed defendant's testimony, the jury could have found him guilty of attempted murder on the basis that defendant knew that grabbing a gun and wrestling with the gunman created a strong probability of great bodily harm to the gunman. Absent instructions on self-defense, the conviction would result even if the jury concluded that defendant reasonably believed such force was necessary to prevent imminent death or great bodily harm to defendant.

*Id.* Thus, *Jaffe* held that a jury could find that attempting to overpower or wrestle with an armed individual was an act that created a strong probability of death or great bodily harm. *Id. Jaffe* therefore concluded that, had a self-defense instruction been submitted, a reasonable probability existed that the defendant would have been found not guilty and that defense counsel was, therefore, ineffective for failing to request such an instruction. *Id.*

The defendant wrestling with an individual who had a gun in *Jaffe* does not differ in any significant way from Appellant wrestling with Shaon while she was wielding a knife.[3] The jury in this case may well have concluded that Appellant's act of attempting to overpower and restrain Shaon while she was wielding a knife was an intentional use of force that created a strong probability of death or great bodily harm.

Moreover, even if an attempt to overpower an individual armed with a deadly weapon did not constitute an act creating a strong probability of death or great bodily harm, the evidence would still support submission of a self-defense instruction. Contrary to the dissent's position, the jury could reasonably have accepted Appellant's account of how his fight with Shaon transpired but disbelieved his testimony about the amount of force he used based upon the physical evidence or a portion of Shaon's testimony. "[A] jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit, and may believe or disbelieve all, *part*, or none of the testimony of any witness." *State v. Thompson*, 147 S.W.3d 150, 163 (Mo.App. S.D.2004) (emphasis added) (internal quotation omitted). Thus, a jury is indeed entitled to piece together the truth from evidence presented from multiple sources and inferences drawn from that evidence.[4]

In light of the physical evidence, even if it disbelieved most or all of Shaon's testimony, the jury could reasonably have believed that the abrasion on Shaon's chest occurred after Appellant turned the knife on Shaon during their fight or while he held her down. In the alternative, based upon evidence that Shaon had tenderness around her neck, the jury may have believed that Appellant had restrained her with a chokehold at some point. The jury could have found that Appellant used such force against Shaon, exposing her to risk of serious physical injury, to protect himself from her attack. Absent an instruction on self-defense, the jury was obligated to find him guilty if he used forcible compulsion to restrain Shaon's liberty and, in so doing, exposed her to risk of serious physical injury, regardless of his reason. Under the circumstances herein presented, there is a reasonable likelihood that the result would have been different had a self-defense instruction been given.

The dissent cites to *State v. Houcks*, 954 S.W.2d 636, 639 (Mo.App. W.D.1997), for the proposition that a defendant must acknowledge that he intentionally used deadly force in order to be entitled to a self-defense instruction. *Houcks* simply does not stand for that proposition. In *Houcks*, the defendant raised the defense of accident. This Court held that defenses of accident and self-defense are inconsistent because "[w]hen claiming self-defense, one acknowledges intentionally inflicting injury or death on another person while asserting such conduct was necessary because of

---

**3.** The dissent apparently believes that no restraint occurred in this case until after Shaon was disarmed. On the contrary, restraint clearly began the moment that Appellant prevented Shaon from leaving the house through the threat of and then actual use of force. At that point, he was clearly interfering substantially with her liberty.

**4.** The dissent implicitly accepts that the jury could believe Shaon's testimony that she was detained with deadly force while rejecting her testimony that she was forcibly sodomized; however, the dissent does not accept that the jury could believe Appellant's testimony that Shaon instigated the incident and threatened him with a knife while disbelieving his testimony regarding the amount of force he utilized to protect himself and his property. The dissent offers no real explanation for this inconsistency.

apprehension of great bodily harm or death.... On the other hand, asserting that injury to another resulted from accident includes the assertion that the causal connection was unintentional." *Id.* at 638. *Houcks* noted that accident and self-defense are "diametrically opposite theories" and that "Missouri courts do not recognize the anomalous doctrine of accidental self-defense." *Id. State v. Avery,* 120 S.W.3d 196, 201 (Mo. banc 2003), and *State v. Randolph,* 496 S.W.2d 257, 262 (Mo. banc 1973), also cited by the dissent in passing, likewise provide that accident and self-defense are inconsistent defenses.

In the case at bar, no claim of accident has been made. The defendant admitted intentionally using force against Shaon and claimed that he did so in order to protect himself. There is nothing inconsistent about claiming that the level of force used did not rise to the level of deadly force, but even if it did, that the use of such force was justified by self-defense.

As noted *supra,* "[a] self-defense instruction must be submitted when substantial evidence is adduced to support it, *even when that evidence is inconsistent with the defendant's testimony.*" *Avery,* 120 S.W.3d at 200 (emphasis added) (internal quotation omitted). The necessary evidence may come from the defendant's testimony, another witness's testimony, and/or any other evidence presented by the State or the defense. *Id.* at 200–01. When viewed in the light most favorable to giving the instruction, the evidence in this case was clearly sufficient to establish the requisite elements of self-defense. The motion court's finding that the evidence did not support the submission of a self-defense instruction and that a reasonably competent attorney would not have requested that instruction was clearly erroneous.

As for prejudice, once Appellant injected the issue of self-defense into the case, the burden would have shifted to the State to prove that he did not act in self-defense. *See Beck,* 167 S.W.3d at 780 ("Once the defendant carries his burden of injecting the issue of self-defense, the State has the burden to prove beyond a reasonable doubt that he did not act in lawful self-defense, and the jury must be instructed accordingly."). Without a self-defense instruction having been submitted to the jury, we simply cannot know whether the jury would have determined that the State met that burden beyond a reasonable doubt.[5] "This is not a case where the evidence is such that we can say, without making a credibility determination reserved for the factfinder, that the evidence of guilt ... was overwhelming and therefore the [lack of an instruction] was immaterial. There were issues here for the jury's resolution under proper instruction." *State v. Johnson,* 54 S.W.3d 598, 605 (Mo. App. W.D.2001). Prejudice is sufficiently established.

In short, Appellant received ineffective assistance of counsel when counsel failed to request that the court instruct the jury on self-defense, and the motion court erred in finding otherwise. Accordingly, the

---

**5.** The jury may, in its discretion, choose to believe all, some, or none of any witness's testimony. *State v. Buhr,* 169 S.W.3d 170, 175 (Mo.App. W.D.2005). Thus, the jury was entitled to take bits and pieces from several witnesses' testimony and the physical evidence in order to draw its own picture of what actually occurred. Indeed, the jury clearly did not accept all of Shaon's testimony as credible, since it acquitted Appellant on the forcible sodomy and armed criminal action counts. In fact, the evidence presented at trial indicated that Shaon's version of the events had varied over time, and the evidence could have supported several different scenarios consistent with the jury's verdict. There is no way of knowing what factual scenario the jury ultimately settled upon.

judgment denying Appellant's motion for post-conviction relief is reversed, and the cause is remanded to the motion court with directions that it enter an order vacating Appellant's conviction and sentence and granting a new trial on the single charge of felonious restraint.[6]

HARDWICK, J., concurs.

HOWARD, P.J., dissents in separate opinion.

HOWARD, P.J., dissenting.

The majority is correct when it notes "[a] self-defense instruction must be submitted 'when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony.'" *State v. Avery,* 120 S.W.3d 196, 200 (Mo. banc 2003) (citation omitted). However, a defense inconsistent with the defendant's testimony is only available where the State or a third party offers evidence of the defendant's prior inconsistent statements supporting self-defense. *Id.* at 200–01. *See also State v. Houcks,* 954 S.W.2d 636, 639 (Mo.App. W.D.1997). In the current case, neither the State nor Stiers offered such evidence. In order to make the pieces fit, the majority opinion takes a pair of scissors to the jigsaw puzzle—it infers the jury was at liberty to force together inconsistent facts to arrive at an operative history unsupported by evidence. I disagree.

I would hold the motion court was not clearly erroneous in failing to find ineffective assistance of counsel because *Strickland's* prejudice prong was not met. Prejudice can only be found where there is a reasonable probability that, but for the omission of an available instruction, the result would have been different. *Slater v.*

*State,* 147 S.W.3d 97, 100 (Mo.App. W.D. 2004). The jury could not have rationally concluded that Stiers *justifiably* subjected Shaon to a *substantial risk of serious injury* while restraining her because neither of their narratives supports such a finding and facts derived from each narrative cannot fit together to amount to justifiable felonious restraint.

The current case probes the limits of the jury's ability to string together facts from antithetical narratives. To claim self-defense for felonious restraint, Stiers must acknowledge he intentionally subjected Shaon to a substantial risk of serious injury. *Houcks,* 954 S.W.2d at 639 (holding "[s]elf-defense is an admission by the person invoking the defense that the person committed the alleged act."). However, Stiers flatly denies doing so. Nor did the State produce evidence of self-defense, the only exception to the rule that the defendant must produce evidence of self-defense for the instruction to be available. *Id.*

The prosecuting witness, Shaon, and the defendant Stiers, presented widely discrepant accounts of the events of the night of June 10, 2000. One describes Stiers prudently acting to protect his property and personal safety while the other describes Stiers feloniously restraining the innocent Shaon. The State produced evidence that Stiers lured Shaon to his home, threatened her with a knife, beat her, choked her, cut her chest with the knife, bound her hands behind her back, sexually assaulted her, and kept her restrained for no less than three hours. Much of this version of events relies on the testimony of Shaon.

According to Stiers, he awoke to find Shaon had entered his house and was rum-

---

**6.** Having reached this conclusion, we need not address Appellant's other points on appeal.

maging through his personal effects. They had been in a relationship for fifteen or sixteen years and Shaon had a history of pawning Stiers' property. When Stiers approached Shaon, he believed she put something in her pocket. She refused to tell him what she had placed in her pocket or agree to empty her pockets. When Stiers attempted to retrieve what he believed to be his property by reaching into her pocket, Shaon slapped him. Stiers slapped back. Shaon then grabbed a knife off the kitchen table and told Stiers to let her go. Stiers renewed his demand that Shaon empty her pockets. After she refused, Stiers attempted to disarm her. When he approached, she kicked him in the groin. A struggle ensued and blows were mutually exchanged. Shaon dropped the knife after Stiers knocked her into a ladder. When she attempted to kick him in the groin again, he "held her down" for approximately five minutes. During this time, the two had a "long conversation" until Shaon became less agitated. He then "helped her up" and, after Stiers offered, she chose to sleep on his bed. Stiers slept elsewhere. According to Stiers, he "did not try to bind her, restrain her, in any way."

When determining if a criminal defendant has demonstrated prejudice by the omission of a defense instruction, we look to the elements of the crime charged and the jury's verdict to determine if the proposed instruction could have affected the verdict. Stiers was charged with felonious restraint. That crime occurs when a defendant "knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty and exposes him to a substantial risk of serious physical injury." RSMo § 565.120. Serious physical injury is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." RSMo § 556.061(28). A self-defense instruction is generally available when a defendant can demonstrate that he was not the initial aggressor, had a reasonable belief that he was faced with the necessity of defending himself from bodily harm, used no more force than necessary, and attempted to avoid the confrontation. *State v. Miller*, 91 S.W.3d 630, 635 (Mo.App. W.D.2002). *See also* RSMo § 563.031. While the two narratives are inconsistent, they do not conflict on the issue of whether there was justification to expose Shaon to a high degree of force while restraining her. Stiers' defense is that he did not use force that created a substantial risk of death or disfigurement when restraining Shaon. Nothing in Shaon's description of events would permit a finding of justification for felonious restraint. No reasonable scenario can be teased from the evidence to support a self-defense instruction.

Stiers presents a story, which, if believed, would compel the jury to acquit.[1] The jury, however, did not believe Stiers' claim that he did not use the requisite high degree of force for felonious restraint. Shaon's story also does not support a meritorious self-defense instruction. It lacks any compelling justification for Stiers' actions. It is a story of gratuitous violence and undeserved imprisonment. A self-defense instruction was, therefore, unneces-

1. By way of illustration, had Stiers been charged with false imprisonment instead of felonious restraint, Stiers would have been prejudiced by the omission of the self-defense instruction. False imprisonment consists of all of the elements of felonious restraint except it does not include exposing another to a substantial risk of serious injury. *See* RSMo § 565.130.1. Stiers admits to restraining Shaon and, thus, without a defense instruction, his own testimony would produce a conviction.

sary and its absence did not alter the result. Stiers was therefore not prejudiced.

Furthermore, not only does neither version of events support a useful self-defense instruction, reasonable combinations of the evidence do not support a useful self-defense instruction. A self-defense instruction is generally not available where the defendant does not admit the underlying crime. *Houcks*, 954 S.W.2d at 639. "The *only* exception to the rule precluding the submission of the inconsistent defense is that the evidence of the inconsistent defense was offered by *either* the state or proved by a third party witness called by the defense." *Id.* (emphasis added). This exception is employed where the State offers a prior statement of the defendant which supports self-defense. *See State v. Randolph*, 496 S.W.2d 257, 262 (Mo. banc 1973); *Avery*, 120 S.W.3d at 202–03. It has not been employed to cobble together evidence provided by both the State and the defendant. While the jury is free to believe portions of any one individual witness's testimony and disregard other portions, it is not free to interpolate significant facts or sew together conflicting evidentiary parts to construct a Frankenstein-fact-pattern unsupported by the evidence.

The majority's reliance on *State v. Thompson*, 147 S.W.3d 150 (Mo.App. S.D. 2004), is misplaced. It argues, "the jury was entitled to take bits and pieces from several witnesses' testimony and the physical evidence in order to draw its own picture of what actually occurred." *Thompson*, however, does not endorse the micro-editing embraced by the majority. The precedent holds that the jury may believe some, all, or none of *any one* witness's version of events. *See State v. Buhr*, 169 S.W.3d 170, 175 (Mo.App. W.D.2005). It does not speak to the situation at hand—where the jury would be forced to cut and paste the testimony of several witnesses to arrive at a contrived history.[2] The jury could not have found that Stiers was justified in restraining Shaon and, in so doing, exposed her to risk of serious physical injury-this version of events is not in evidence. A hybrid version of events, in which Stiers feloniously restrained Shaon and was justified in doing so, the only scenario in which the additional instruction would be useful, is unsupported by the evidence.

The majority writes, "the jury could reasonably have accepted [Stiers'] account of how his fight with Shaon transpired, but disbelieved his testimony about the amount of force he used based upon the physical evidence or a portion of Shaon's testimony."[3] This scenario demonstrates the weak joints in the majority opinion. It assumes, without stating so, that it is permissible to import the degree of force used from Shaon's testimony into Stiers' narrative. The majority treats the degree of force used like a sliding scale that the jury is at liberty to adjust at will. A jury may certainly navigate through conflicting evidence and believe, or disbelieve, portions of testimony. But, its findings must rely

---

2. The majority insinuates that this rule of law would prohibit the jury from believing Stiers' testimony that Shaon instigated the incident and threatened him with a knife while disbelieving Stiers' testimony regarding the amount of force he utilized to protect himself. I disagree. In this scenario, the jury only believes and disbelieves portions of one person's evidence, namely Stiers. I only imply that the importation of the degree of force is impermissible and that without that importation Stiers cannot demonstrate prejudice.

3. The physical evidence, however, is inconsistent with Stiers' narrative. The knife wound on Shaon's chest is antithetical to a justified use of force and the conduct causing the bruises does not, standing alone, amount to exposure to a substantial risk of serious injury.

on a coherent version of events supported by the evidence. The majority would have a difficult time describing the historical chain of events that would have supported a self-defense instruction.[4]

Ultimately, this case reduces to the fact that neither party submitted evidence or proposed a theory in which Stiers would have been justified to use extreme force while restraining Shaon. To imply the jury could string together facts from the antithetical accounts would impermissibly sanction the interpolation of significant facts not in evidence. The jury could, therefore, not have properly used a defense-of-self instruction. Because the jury could not have used a self-defense instruction, Stiers was not prejudiced in its absence.

For the reasons stated above, I would affirm.

---

4. The two possibilities suggested by the majority impermissibly imply facts not reasonably inferable from the evidence. There is no evidence that Stiers "wielded" a knife against Shaon during a fight. There is only evidence that he cut her while she was bound (her testimony) and that she wielded the knife against him (his testimony). Furthermore, even assuming Stiers applied such great force to Shaon's neck that it amounted to deadly force, the record does not demonstrate how that high degree of force could have been justified. In both versions of events, Shaon was disarmed.